**Martha L. SAUNDERS, Administratrix of the Estate of Claude Saunders**

v.

**STATE of Rhode Island et al.**

**No. 80–560–Appeal.**

Supreme Court of Rhode Island.

June 3, 1982.

---

Thomas A. Tarro, III, Providence, for plaintiff.

Dennis J. Roberts II, Atty. Gen., Eileen G. Cooney, Sp. Asst. Atty. Gen., for defendants.

## OPINION

WEISBERGER, Justice.

The United States District Court for the District of Rhode Island, acting pursuant to Sup.Ct.R. 6, has certified to us the following questions of law:

"1. Do the State of Rhode Island, its officers, and employees have a duty to exercise *reasonable* care to protect prisoners in state correctional institutions from violent attack by other inmates, or is their duty measured by some other standard of care? (Emphasis in original.)

"2. In order to establish a violation of this duty, must a plaintiff prove *any* of the following: (Emphasis in original.)

"(a) That prison personnel knew, or had reason to anticipate, that the victim was in danger?

"(b) That prison personnel knew, or had reason to anticipate, that the aggressor might attack the victim?

"(c) That prison personnel knew, or had reason to anticipate, that the aggressor had dangerous propensities and/or was likely to be involved in a violent outburst?

"3. Is the State of Rhode Island liable on the theory of *respondeat superior* for the negligence of prison guards, which negligence was a proximate cause of the death of an inmate at the hands of another prisoner?"

These questions arise out of a civil action brought by Martha L. Saunders in her capacity as administratrix of the estate of Claude Saunders as a result of the fatal stabbing of Claude Saunders by fellow inmates on November 2, 1974. The plaintiff brought action in the United States District Court against the State of Rhode Island and against James W. Mullen, individually and in his capacity as warden of the Adult Correctional Institutions, in order to recover for a violation of her son's civil rights pursuant to 42 U.S.C.A. § 1983 (1974). In addition, she joined a pendent claim for wrongful death under the law of the State of Rhode Island. (Originally five unidentified prison guards were joined as defendants. They were dropped as defendants when plaintiff failed timely to amend her complaint to identify them.)

After trial, the jury returned a verdict for both defendants on the civil rights claim. The trial judge had also submitted a set of special interrogatories to the jurors in

respect to the claim for wrongful death.[1] Following the report of the jurors in respect to the interrogatories, the trial judge certified the foregoing questions of law to this court.

█ In the absence of a statute, nearly all courts that have considered the matter have concluded that prison officials owe a duty of ordinary or reasonable care to safeguard prisoners in their custody or control from attack by other prisoners. *See, e.g., Matthews v. District of Columbia,* 387 A.2d 731 (D.C.App.1978); *Harris v. State,* 61 N.J. 585, 297 A.2d 561 (1972); *Upchurch v. State,* 51 Haw. 150, 454 P.2d 112 (1969); *Lamb v. Clark,* 282 Ky. 167, 138 S.W.2d 350 (1940); annot. 41 A.L.R.3d § 4 at 1028 (1972); Restatement (Second) *Torts* § 320 at 130 (1965). Indeed, in the case at bar the Attorney General on behalf of defendants concedes that prison officials owe a duty of reasonable care to protect inmates in the custody of the warden of the Adult Correc-

tional Institutions from attack by fellow inmates and urges that this court should respond to question No. 1 in the affirmative. As a consequence, we are of the opinion that question No. 1 should be answered in the affirmative.

█ In respect to the second question, the parties are in sharp disagreement. It is the contention of the state that there should be no liability on the part of the state or prison officials in the absence of actual or constructive notice that the inmate was in danger of being attacked. This principle has been recognized in *Muniz v. United States,* 280 F.Supp. 542 (S.D.N.Y. 1968); *Johnson v. United States Government,* 258 F.Supp. 372 (E.D.Va.1966); *Lexington v. Greenhow,* 451 S.W.2d 424 (Ky.Ct. App.1970); *Ratliff v. Stanley,* 224 Ky. 819, 7 S.W.2d 230 (1928); *Adams v. State Dept. of Institutions,* 247 So.2d 149 (La.App.1971); *Harris v. State,* 61 N.J. 585, 297 A.2d 561 (1972); *Justice v. Rose,* 102 Ohio App. 482, 144 N.E.2d 303 (1957).

1. The interrogatories submitted and the answers thereto were as follows:

"1. On the night of Saunders' death, did the guards in cellblock ABC fail to exercise reasonable care in affording Saunders adequate protection from attack?
"Answer: Yes.
"2. If 'Yes,' answer the following question. Was this failure a proximate cause of Saunders' death?
"Answer: Yes.
"3. Did defendant Mullen know of the practice of allowing some prisoners out of their cells during lockup?
"Answer: Yes.
"4. If 'Yes,' was his action in permitting this practice to continue a failure to exercise reasonable care in affording Saunders adequate protection from attack?
"Answer: No.
"5. If 'Yes,' answer the following question. Was this failure a proximate cause of Saunders' death?
"Answer: No.
"6. Did the physical facilities, staffing and/or classification system at the ACI in 1974 evidence a failure by the State to exercise reasonable care in affording Saunders adequate protection from attack?
"Answer: Yes.
"7. If 'Yes,' answer the following question: Was this failure a proximate cause of Saunders' death?
"Answer: Yes.

"8. Did prison personnel know, or have reason to anticipate, that Saunders was in danger?
"Answer: No.
"9. Did prison personnel know, or have reason to anticipate, that the inmate who killed Saunders might attack him?
"Answer: No.
"10. Did prison personnel know, or have reason to anticipate, that the inmate who killed Saunders had dangerous propensities and/or was likely to be involved in a violent outburst?
"Answer: No.
"11. Do you find Claude E. Saunders negligent?
"Answer. Yes.
"12. Do you find the State of Rhode Island negligent?
"Answer: Yes.
"13. Do you find James W. Mullen negligent?
"Answer: No.
"14. If you have answered question number 11 'Yes,' then what percentage of negligence do you charge to Claude E. Saunders?
"Answer: 50%.
"15. If you have answered question number 12 'Yes,' then what percentage of negligence do you charge to the State of Rhode Island?
"Answer: 50%.
"16. If you have answered question number 13 'Yes,' then what percentage of negligence do you charge to James W. Mullen?
"Answer: 0%."

In *Harris* the Supreme Court of New Jersey, after an extensive analysis of cases in other jurisdictions, stated the general rule as follows:

"[B]efore the State or its prison officers may be held liable for injuries inflicted by one prison inmate on another, 'there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury.'" [Citations omitted.] *Harris v. State*, 61 N.J. at 591, 297 A.2d at 564.

The Supreme Court of New Jersey further observed that this rule as embodied in numerous opinions was designed "to afford reasonable protections to prisoners without imposing unreasonable burdens on prison officials." *Id.* at 592, 297 A.2d at 564.

The plaintiff contends that this "prior notice" rule is an inappropriate standard and has been rejected by the Court of Appeals of the District of Columbia in *Matthews v. District of Columbia*, 387 A.2d 731, 732 (D.C.App.1978). A careful reading of *Matthews* discloses, however, that the Court of Appeals of the District of Columbia was in agreement "that a party cannot be held liable in a negligence action for events which are *not* foreseeable by the exercise of reasonable diligence * * *." (Emphasis in original.) *Id.* at 734. Chief Judge Newman suggested that the prior-notice rule was a variation on the ordinary-negligence standard.

It is our opinion that foreseeability and prior notice are concepts that do not contradict each other. Notice of danger or defect has long been an element of foreseeability. *See Evans v. Liguori*, 118 R.I. 389, 395 n.2, 374 A.2d 774, 777 n.2 (1977); *S. M. S. Sales Co. v. New England Motor Freight, Inc.*, 115 R.I. 43, 48, 340 A.2d 125, 128 (1975); *Aldcroft v. Fidelity & Casualty Co.*, 106 R.I. 311, 314, 259 A.2d 408, 411 (1969); *Denisewich v. Pappas*, 97 R.I. 432, 437, 198 A.2d 144, 148 (1964). We are of the opinion that the prior-notice rule is, in effect, merely a more specific application of the general rule

of foreseeability. The *Matthews* court stated clearly and unequivocally that the government was not an insurer of the safety of a prisoner and would only be liable in the event that damage proximately results from a failure to exercise reasonable care to prevent harm. 387 A.2d at 734. We agree with the Supreme Court of New Jersey that this duty to provide reasonable care to protect an inmate from violence would not be violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by the prison official.

As a consequence, we are of the opinion that question No. 2 should be answered in the affirmative in respect to subsections (a) and (b). In respect to question No. 2(c), we also respond in the affirmative but with the caveat that prison officials should have had notice, if liability were to accrue, that these dangerous propensities would be likely to give rise to an attack upon plaintiff's decedent as a specific identifiable victim or as a member of a group of identifiable victims. *See Thompson v. County of Alameda*, 27 Cal.3d 741, 614 P.2d 728, 167 Cal.Rptr. 70 (1980).

■ In respect to question No. 3, we are of the opinion that the State of Rhode Island has waived its sovereign immunity by virtue of the provisions of G.L.1956 (1969 Reenactment) § 9–31–1, as enacted by P.L. 1970, ch. 181, § 2 which provides:

"The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation, provided however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter."

Section 9–31–2, as amended by P.L.1974, ch. 39, § 1 sets forth a limitation of damages in the sum of $50,000 to be awarded against the state of Rhode Island when engaged in its governmental functions. There is no question that maintenance of a correctional institution is a governmental function.

Consequently, in the event that a correctional officer employed by the state was guilty of negligence and was not protected by personal immunity, the state would be liable under the doctrine of *respondeat superior* for the negligence of its employee subject to the monetary limitation set forth in § 9–31–2. *See Calhoun v. City of Providence*, 120 R.I. 619, 390 A.2d 350 (1978). *See also Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970); *Smith v. Raparot*, 101 R.I. 565, 225 A.2d 666 (1967); *Giroux v. Murphy*, 88 R.I. 280, 147 A.2d 465 (1959).

We thus answer question No. 1 in the affirmative. We answer question No. 2 in the affirmative in regard to subsection (a) and/or subsection (b) and question No. 2(c) in the affirmative in the event that such knowledge would have constituted knowledge of a predictable threat of harm to the decedent as an identifiable victim or member of a group of potential victims. We answer question No. 3 in the affirmative.