John ORZECHOWSKI et al.

v.

STATE of Rhode Island.

No. 81–563–Appeal.

Supreme Court of Rhode Island.

Dec. 5, 1984.

Leonard Decof, R. Daniel Prentiss, Peter J. Cerilli, Decof & Grimm, Providence, for plaintiffs.

Dennis J. Roberts, II, Atty. Gen., William M. Walsh, Sp. Asst. Atty. Gen., Charles

McKinley, Providence, on brief, for defendant.

## OPINION

MURRAY, Justice.

This is a civil action brought by Patrolman John Orzechowski and his wife, Jeannine, against the members and staff of the Rhode Island Parole Board and, through the doctrine of respondeat superior, the State of Rhode Island. The case comes before us on the plaintiff's appeal from a Superior Court order granting the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The plaintiffs vigorously contend that the judge below erred in granting that motion.

Before setting forth the facts pertinent to this appeal, we reiterate our scope of review following the grant of a Rule 12(b)(6) motion. Dismissal of a cause of action under Rule 12(b)(6) is a harsh remedy and is proper only where plaintiff is not entitled to relief under any conceivable set of facts that might be proved in support of his claim. *Salvadore v. Major Electric & Supply, Inc.*, R.I., 469 A.2d 353, 357 (1983); *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967). In testing the sufficiency of a plaintiff's cause of action, all allegations are taken as true and all doubts are resolved in the plaintiff's favor. *Dutson v. Nationwide Mutual Insurance Co.*, 119 R.I. 801, 803–04, 383 A.2d 597, 599 (1978). Only where it appears beyond a reasonable doubt that the plaintiff is not entitled to relief should a Rule 12(b)(6) motion be granted. *Id.* With these standards in mind, we consider plaintiffs' factual allegations.

John Orzechowski is, and has been for some ten years, a member of the Pawtucket police department. On the night of April 9, 1976, Officers Orzechowski and George Kelly were on routine patrol in the city of Pawtucket when a call came in reporting a holdup in progress. The two officers responded to the call. Upon arriving at the scene, the Woodlawn Liquor Store, they observed two suspects, later identified as Anthony J. Souza and David R. Cochrane, whom the officers attempted to apprehend. During an ensuing struggle Patrolman Orzechowski was shot in the stomach by Souza.

The shooting left Patrolman Orzechowski seriously and permanently injured. He has experienced extreme pain and suffering, damage to his nerves and nervous system that has resulted in a loss of feeling in his right leg and toes, and chronic lower-back pain. He has incurred substantial medical expenses. Patrolman Orzechowski was unable to return to work until February of 1977, and then only at light-duty status. Jeannine Orzechowski has suffered from the loss of companionship, society, love, and consortium of her husband John.

An investigation made into the assailant's background turned up facts that form the basis of the Orzechowskis' complaint. In 1966 Souza had been tried and convicted of a 1964 murder. He was originally sentenced to life imprisonment for that murder. Appeals resulted in his resentencing, again for life, in 1972. That same year, Souza escaped from the Adult Correctional Institution. He was later apprehended, convicted of actual escape, and sentenced to an additional six months imprisonment for this offense. Souza's prison record indicated the occurrence of multiple violations and infractions of prison regulations. Notwithstanding the above, Souza applied for and was granted parole in February of 1976, some ten years into his life-plus-six-months sentence. The parole was granted approximately two months before the night Souza shot John Orzechowski.

The law governing the parole of a prisoner who is convicted of escape while serving a life sentence is governed by statute. That statute mandates that such a prisoner is not eligible for parole until at least twenty-five years of the prison term has been served:

[I]n [the] case of a prisoner sentenced to imprisonment for life who is convicted of escape * * * such permit [for parole] may be issued only after such prisoner has served not less than twenty-five (25) years imprisonment * * *. G.L.1956 (1969 Reenactment) § 13–8–13, as amended by P.L.1975, ch. 190, § 1.[1]

Anthony Souza, who clearly fits within the ambit of the above provision, was released from prison fifteen years before he became statutorily eligible for such release. The essence of plaintiffs' complaint is that had Souza been incarcerated for the length of time mandated by § 13–8–13, he could not have attempted to hold up the Woodlawn Liquor Store, and he could not have shot John Orzechowski.

On April 7, 1978, the Orzechowskis filed a complaint in Providence Superior Court, naming as defendants the State of Rhode Island and each individual who served as a member of the parole board in February of 1976, when Souza was granted parole. On November 15, 1980, plaintiffs filed an amended complaint adding an Executive Secretary and an employee of the parole board as named defendants. All parole board members were named in both their official and individual capacities.

The Orzechowskis' complaint alleged that defendants owed them a duty not to grant Souza a parole in contravention of state law, that this duty was breached by the negligent and unlawful parole of Souza, and that plaintiffs suffered personal injuries and consequential damages as a result of that breach. Judgment was prayed for against the state in the amount of $300,000 [2] and against the individual defendants in the amount of $300,000 compensatory and $100,000 punitive damages.

Following discovery and a number of pretrial motions, defendants moved the Superior Court to dismiss plaintiffs' action pursuant to Rule 12(b)(6). On October 28, 1981, a hearing was held and defendants' motion was granted. The justice below based his ruling on a lack of duty running from defendants to the individual plaintiffs in this case.

■ At the outset, we find it helpful to point out what this case is *not* about. It does not involve the liability of the state for its negligence toward a specific, identifiable individual or class of individuals. Even accepting, as we must, that the parole board acted unlawfully in granting Souza's parole, there are no allegations that even hint that John or Jeannine Orzechowski were reasonably foreseeable as victims of that unlawful action. Had there been any such allegations, this would be a different case. The law of this jurisdiction is clear that the state, or any political subdivision of the state, may be held liable for a breach of duty toward an identifiable person or class of persons. For example, in *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970), a municipal police department negligently permitted a prisoner with known suicidal tendencies to occupy a cell that contained articles capable of assisting in a suicide. The prisoner, who did in fact take his own life using a blanket which was left in his cell, was an identifiable individual to whom the police department owed a duty of reasonable care, at least while in their custody and known to be suicidal. The same was true in *Calhoun v. City of Providence*, 120 R.I. 619, 390 A.2d 350 (1978), where the plaintiff wrongfully was arrested and detained because a court clerk negligently had failed to record a recall order for an outstanding capias. The

---

1. In 1981, G.L.1956 (1969 Reenactment) § 13–8–13 was again reenacted by the General Assembly. The substance of that provision remains the same.

2. On May 11, 1978, the Rhode Island General Assembly enacted special legislation for the benefit of the Orzechowskis, which provided that in the event that the state's negligence caused John

Orzechowski to sustain damages, the state would be liable for damages of not more than $300,000. Act of May 11, 1978, 1978 R.I. Acts & Resolves 30. This is in contrast to the normal ceiling of $100,000 in tort actions against the state. G.L.1956 § 9–31–2, as amended by P.L. 1984, ch. 87, § 1 (effective January 1, 1985).

clerk's duty to record the order ran directly to the plaintiff, and it was reasonably foreseeable to the clerk that failure to record the order would result in the plaintiff's arrest. In both these cases, the public officials involved were under a duty to the public as a whole. But in addition to their public obligations, these officials were also under a duty to a particular individual, and it was reasonably foreseeable that that specific individual would be harmed if this duty was breached.

In contrast to the above cases are *Ryan v. State Department of Transportation*, R.I., 420 A.2d 841 (1980), and *Saunders v. State*, R.I., 446 A.2d 748 (1982). In *Ryan*, the plaintiffs filed a complaint alleging that the state's negligent administration of the motor vehicle licensing laws caused them to suffer personal injuries and consequential damages arising out of an automobile accident. The accident occurred with one Bruce A. Eaton, a licensed driver who the plaintiffs claimed did not merit possession of a license in light of his lengthy record of motor vehicle violations. In fact, the plaintiffs claimed that the registrar had violated two separate statutes in restoring Eaton's license, which had been suspended. This court affirmed the trial justice's grant of the defendants' Rule 12(b)(6) motion, holding that

> The law of negligence does not impose liability upon an individual unless there is a breach of a duty owed to the plaintiff. * * * In suits brought against the state, plaintiffs must show a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public. *Ryan*, 420 A.2d at 843.

The obligation of the registrar in *Ryan* ran to the general public, and it could not be argued that the plaintiffs were reasonably foreseeable as victims of the registrar's licensing of Eaton. In *Saunders, supra*, we reaffirmed the principles enunciated in *Ryan*. Our decision in *Saunders* made clear that in order to establish liability on the part of prison or state officials,

the plaintiff must plead and prove that prison personnel knew or reasonably should have known that an aggressor might attack the victim, or that the victim was in danger. We further held that the state could be held liable where prison officials knew or had reason to know that the aggressor had dangerous propensities which would likely manifest themselves in a violent outburst. The latter liability would accrue, however, only where "prison officials should have had notice * * * that these dangerous propensities would be likely to give rise to an attack upon plaintiff's decedent as a specific identifiable victim or as a member of a group of identifiable victims." *Saunders v. State*, 446 A.2d at 751 (citing *Thompson v. County of Alameda*, 27 Cal.3d 741, 614 P.2d 728, 167 Cal. Rptr. 70 (1980)). The identification of a specific individual as a potential victim would give rise to a special duty on the part of the officials to take reasonable steps to prevent an attack. In the absence of such a special duty, there could be no basis for state liability.

■ From the decided cases concerning state liability, then, emerges a distinction between public duty (owing to the citizenry at large) and special duty (owing to a specific identifiable individual). Breach of the latter will give rise to liability on the part of the state while breach of the former is recompensable, if at all, only though public prosecution. We recognize this distinction between public and special duty for what it is—a manifestation of public policy. Indeed, the element of duty in any negligence action is grounded in policy considerations. As Professor Prosser so aptly states: "it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *D'Ambra v. United States*, 114 R.I. 643, 648, 338 A.2d 524, 527 (1975) (quoting Prosser, *The Law of Torts* § 53 (4th ed. 1971)). The plaintiffs do not urge that we abolish this distinction between public duty

and special duty.[3] Rather, they argue that policy considerations necessitate recognition of a duty running from the parole board to individual members of the public. The considerations that underlie our holdings in *Ryan* and *Saunders* are applicable to this case as well, and we decline to recognize a special duty owed by the parole board to a private individual injured by a parolee, at least in the absence of an allegation that defendants knew or reasonably should have known of a threat to the specific plaintiff.

■ The parole board is most certainly bound by a duty to obey the law and to exercise reasonable judgment in the performance of its critical functions. But this duty runs to the public as a whole, and not to any particular individual or class of individuals—unless special circumstances are involved that bring the plaintiff specifically into the realm of the parole board's knowledge. It follows, therefore, that breach of the parole board's public obligations ordinarily may not be prosecuted by private lawsuit.

If the parole board's duty were to be classified as a special duty running to each and every individual member of the public, as plaintiffs request, the potential for private lawsuits would be limitless as any injury caused by a parolee would be actionable. This would severely undermine the ability of the parole board to perform its functions properly. Such an extension of liability would be likely to present a disincentive to serve on the parole board and might very well exert an influence, however great or small, on the decision-making process itself. Absent an express indication by the General Assembly to the contrary, to adopt a rule of parole-board liability where some uncertain harm may happen to an unidentified member of the public would, we believe, stretch the state liability prescribed under G.L.1956, chapter 31 of title 9, beyond the limits intended by the Legislature.

We decline to deviate from the standards adopted in *Ryan* and *Saunders* concerning the distinction between duties owed to the general public and duties owed to a specific individual or class of individuals. As sovereign, the State of Rhode Island undertakes a wide variety of activities which an individual either would not or could not undertake. The paroling of convicted felons is just one such action. The state acts in this area not out of mere volition or desire, but out of an obligation owed to its citizens. The state cannot be analogized to one who volunteers and then may be held liable to all persons proximately affected by those actions. The state, as sovereign, is under a continuing duty to perform certain functions, and we decline to hold them liable for the consequences of performance of those functions in the absence of a duty to a specific person or class of persons. A con-

---

**3.** There has been some criticism of the judicially fashioned distinction between a duty owed the public in general and a duty owed to individual members of the public. *See, e.g., Adams v. State,* 555 P.2d 235 (Alaska 1976); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976); Note, *State Tort Liability for Negligent Fire Inspection,* 13 Colum. J.L. & Soc.Probs. 303 (1977); Note, *Municipal Liability for Negligent Inspection,* 23 Loy.L.Rev. 458 (1977). We find no reason, however, to question what has become a basic element of the law of negligence.

A duty may be general, and owing to everybody, or it may be particular, and owing to a single person only by reason of his peculiar position. Instances of the latter sort * * * [include] the duty of every person to so conduct his business as to avoid exposing others to injury. But a duty owing to everybody can never become the foundation of an action until some individual is placed in position which gives him particular occasion to insist upon its performance; it then becomes a duty to him personally.

3 Cooley, *Law of Torts* § 478 at 366 (4th ed.1932). *See also Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 804 (Minn.1979).

The very nature of a sovereign's obligations to its people make this distinction crucial; to hold otherwise would result in exposure to liability for practically every action taken in the governance of its citizens. Further, a contrary rule would invite judicial scrutiny of every act of the other branches of government which has some effect upon the public. Such scrutiny could very well implicate the doctrine of separation of powers.

trary decision would subject the state to potential liability for each and every action it undertook. Even minimal insight reveals that this would lead to hesitation on the part of the state to undertake and perform duties necessary to the functioning of a free society.

The plaintiffs have failed to allege facts that would give rise to a special duty owed to them by the Rhode Island Parole Board. We thus affirm dismissal of their complaint.

The plaintiffs' appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.