Frederick H. KNUDSEN et al.

v.

Janet H. Warner HALL et al.

No. 82–236–Appeal.

Supreme Court of Rhode Island.

April 11, 1985.

Reargument Denied May 9, 1985.

Bradford Gorham, Gorham & Gorham Inc., Providence, for plaintiffs.

Arlene Violet, Atty. Gen., Richard B. Wooley, Asst. Atty. Gen., Providence, for defendants.

## OPINION

KELLEHER, Justice.

Frederick H. Knudsen and his wife, Ann M. Knudsen, the plaintiffs below, commenced this negligence action against the defendants, Janet H. Warner Hall[1] and the State of Rhode Island, as a result of a motor-vehicle collision that occurred on a state highway. Prior to trial, the action against Mrs. Hall was dismissed by a "stipulation and judgment" filed on July 1, 1981. A Superior Court jury subsequently found Mr. Knudsen, Mrs. Hall, and the state all negligent to varying degrees and awarded damages to both Mr. and Mrs. Knudsen for their injuries. The trial justice then granted the state's motion for a directed verdict, and the Knudsens appealed. The state has cross-appealed. We affirm the decision of the trial justice.

On August 29, 1979, at 5 p.m., Mr. and Mrs. Knudsen were heading home from a doctor's appointment, traveling south on Route 102 in Foster, Rhode Island. Mr. Knudsen was driving. Mrs. Hall, at this time, was driving northeasterly from her home in Moosup, Connecticut, toward Providence on Route 14, which intersects Route 102. She and her two sisters were bound for a Bee Gees concert at the Civic Center in Providence. She had never driven this stretch of road before. At the point at

---

1. Prior to trial, Janet Warner married and now carries the surname Hall. Consequently, we have amended the title to indicate the change of name.

which Routes 102 and 14 intersect, Mrs. Hall became confused, thinking she had come to a "circle or dead end." As she proceeded slowly through the intersection at two to three miles per hour, her car collided with the Knudsens' car, which was traveling at thirty-five miles per hour. All the people riding in the two cars were injured. Mr. Knudsen in particular suffered a severe exacerbation of his multiple sclerosis as a result of the collision.

At trial, the Knudsens sought to prove that but for the negligence of the state in failing to properly maintain the intersection, the mishap would not have occurred. Testimony indicated that at the time of the collision, the stop sign that was normally at the end of Route 14 where it joins Route 102 was missing. Also absent were signs warning of an approaching intersection and a stop line to indicate where Route 14 ended. Indeed, testimony and photographs showed that the center lines of Route 14 led right out into the travel lanes of Route 102 without a break, further confusing unwary motorists.

In addition to these problems, the intersection is located in a rural area with brush growing along the sides of the road. Mrs. Hall testified at trial that on the day of the collision the brush, which was usually cut back by the state, was so overgrown that it obstructed her field of vision to the point that she could not see the Knudsens' car until the collision was imminent and unavoidable.

The Knudsens contended at trial that these facts demonstrated that the state had negligently maintained the intersection, thereby causing the unfortunate incident. Various experts were presented by the Knudsens to show procedures that should have been followed for the routine maintenance of the intersection, including the normal positioning of the missing stop sign

and the haphazard division of responsibility for cutting the brush. The Knudsens also presented as an expert witness a civil engineer, who testified that the generally accepted standard for visibility at an intersection is 300 feet. With the brush uncut, the visibility at this intersection was only 250 feet.

At the close of the Knudsens' case, the state's motion for a directed verdict was denied by the trial justice. The state presented its case and then renewed its motion for a directed verdict. The court granted this motion in regard to the missing stop sign and took the "remainder of it [the motion] * * * under advisement."

Written interrogatories were submitted to the jury, which then returned a verdict finding Mr. Knudsen 20 percent, Mrs. Hall 47.5 percent, and the state 32.5 percent negligent. Damages of $115,000 were awarded to Mr. Knudsen, and of $13,300 to Mrs. Knudsen. After counsel presented further arguments on the state's motion for a directed verdict, the trial justice stated without elaborating, "I'm going to grant that motion."

The parties have briefed and argued various points before this court, none of which we find dispositive. We do, however, affirm the trial justice in directing the verdict for the state since we have concluded that the Knudsens' claim is barred under *Ryan v. State Department of Transportation*, R.I., 420 A.2d 841 (1980).

In *Ryan* we established an exception to G.L.1956 (1969 Reenactment) § 9–31–1, as enacted by P.L.1970, ch. 181, § 2, which abrogates the doctrine of sovereign immunity with respect to the tortious conduct of the state.[2] We held:

"In suits brought against the state, plaintiffs must show a breach of some duty owed them in their individual capacities

2. General Laws 1956 (1969 Reenactment) § 9–31–1, as enacted by P.L.1970, ch. 181, § 2, provides: **"Tort liability of State.**—The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in

§ 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation, provided however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter."

and not merely a breach of some obligation owed the general public." *Id.* 420 A.2d at 843.

Accordingly, we held harmless the registrar of motor vehicles for his actions in restoring the license of a suspended driver who was then involved in a fortuitous collision that seriously injured the plaintiffs.

We reaffirmed and further defined this distinction between "public duty (owing to the citizenry at large) and special duty (owing to a specific identifiable individual)" in *Orzechowski v. State,* R.I., 485 A.2d 545, 548 (1984). There, we found that no special duty existed between the Rhode Island Parole Board and the victim of a negligently paroled prisoner. We pointed out that a special duty would be created where "special circumstances are involved that bring the plaintiff specifically into the realm of the parole board's knowledge." Further, "[t]he identification of a specific individual as a potential victim would give rise to a special duty on the part of the officials to take reasonable steps to prevent an attack." *Id.* 485 A.2d at 548–49.

Similarly, in *Saunders v. State,* R.I., 446 A.2d 748 (1982), we denied relief to the mother of a prisoner murdered by his fellow inmates. In holding the state and the warden of the Adult Correctional Institutions unaccountable for the prisoner's death, we stated that knowledge of the threat posed by the attacker and the position of the plaintiff's decedent as a "specific identifiable victim or as a member of a group of identifiable victims" were crucial

to establishing the state's liability. *Id.* 446 A.2d at 751.

In reviewing the decision of a trial justice on a motion for a directed verdict, we must view the evidence in the light most favorable to the nonmoving party to determine if there are issues upon which reasonable persons could draw conflicting conclusions. *Bitgood v. Allstate Insurance Co.,* R.I., 481 A.2d 1001 (1984); *Powers v. Carvalho,* 117 R.I. 519, 368 A.2d 1242 (1977).

▉ There is no question here that the state was responsible for the maintenance of the intersection at which the mishap occurred. General Laws 1956 (1979 Reenactment) § 24–8–14 requires that the state keep its highways in "good repair." [3] However, the state's duties in this respect clearly extend to the motoring public in general. In the cases in which we have affirmed the existence of a special duty, either the plaintiffs have had prior contact with state or municipal officials who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.[4] No such circumstances have been alleged by the Knudsens. There is not a shred of evidence on the record before us that would indicate that the Knudsens could have been foreseen as "specific, identifiable" victims of the state's negligence here.

In the absence of circumstances giving rise to a special duty owed to the Knudsens by the state, there is no basis for state liability.[5] Consequently, the trial justice

---

**3.** General Laws 1956 (1979 Reenactment) § 24–8–14 provides: **"Responsibility for maintenance.**—Any such portion of a public road which is constructed or improved as aforesaid * * * shall be known as a state road, except as otherwise provided by law, be kept in good repair from the time of said construction and improvement at the expense of the state under the supervision of the director of transportation."

**4.** In *Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970), municipal police officers placed a prisoner with known suicidal tendencies in a cell containing articles with which he then ef-

fectuated his death. In *Calhoun v. City of Providence,* 120 R.I. 619, 390 A.2d 350 (1978), the plaintiff was wrongfully arrested because an outstanding capias for his arrest had not been recalled through the negligence of a court clerk.

**5.** We would point out that the Legislature, through §§ 24–5–12 and 24–5–13, has specifically imposed liability on *towns* for personal injuries resulting from "neglect to keep [town] highways in repair." Section 24–5–12 levies a fine against the town for such neglect, and § 24–5–13 unequivocally states, "Such towns shall also be liable to all persons who may in any wise suffer injury to their persons or property by

properly granted the state's motion for a directed verdict as a matter of law.

The plaintiffs' appeal is denied and dismissed. The judgment of the trial justice is affirmed, and the papers in this case are remanded to the Superior Court.

reason of any such neglect, to be recovered in a civil action." There are no comparable statutes

for state highways.