Ralph PELLETIER, Individually and as
Parent and Next Friend of
Paulette Pelletier

v.

Genevieve KURDZIEL, Town Treasurer
of Westerly, et al.

No. 83–519–Appeal.

Supreme Court of Rhode Island.

May 13, 1986.

Roderick A. Cavanagh, Wakefield, for plaintiff.

Paula A. Kelly, Carroll, Kelly & Murphy, John R. Mahoney, Baluch, Mahoney & Gianfrancesco, Providence, for defendants.

OPINION

KELLEHER, Justice.

This is a Superior Court negligence action in which Ralph Pelletier, as father and next friend of his daughter Paulette, seeks damages from Ronald A. Nye, a member of the town of Westerly's police department. The father's appeal follows the grant of the municipality's and the police officer's motion for summary judgment.

The pertinent, undisputed facts present a truly tragic episode. In January 1978 Paulette and her girl friend Gail were sophomores at a private girls' academy situated in Baltic, Connecticut. Sometime on the evening of January 11, 1978, Paulette, an honor student, and Gail left the school for the express purpose of going to Tennessee to visit Gail's boyfriend. After walking a short distance, they came upon a gray Chevrolet compact sedan. After a search of the vehicle's interior, Gail discovered the vehicle's keys hidden under a mat. Taking the car, the two students headed toward the Ashaway section of Westerly, where they intended to stay overnight at Paulette's parents' home.

After Gail had driven a short distance, Paulette took over the driving. Upon arriving at Paulette's house, the two noticed that the lights were still on, and this factor precipitated a change of plans. Although their immediate goal that evening was to go to New York, Paulette decided to show her schoolmate various portions of the town of Westerly. After visiting the Dunn's Corner area, they arrived at the parking lot of a shopping center located on Franklin Street in Westerly. They parked the vehicle in front of a J.C. Penney department store. There the schoolmates listened to a series of tapes that belonged to the owner of the Chevrolet.

At approximately 4:30 a.m. Officer Nye observed the parked Chevrolet. He approached the vehicle and asked both passengers for some type of identification, such as a driver's license or the vehicle's registration. Paulette, who was fifteen at the time, gave the officer a false name and, to convey the impression of having a license, began to rummage through the contents of her pocketbook. Matters reached an impasse when neither Paulette nor Gail could produce any means of identification. Nye checked with police headquarters to see if the Chevrolet was a stolen car and received a negative response. He then told the teenagers, "I think you are both minors and this is a stolen car." He told Paulette to drive the car to the police station, adding that he would follow them.

As they proceeded toward the station, Gail, who had some prior involvement with the police, told Paulette that she "couldn't go down to the police station." This was the last event of the evening that Paulette could recall. The next thing she remembered was waking up in a hospital bed ten days after the collision.

In his affidavit in support of the motion for summary judgment, Officer Nye described what occurred after Paulette started the vehicle and drove out of the parking lot. He averred that on the way to the station, Paulette attempted to leave the scene by driving at an excessive rate of speed. Initially, he explained, "I attempted to follow her with my lights and siren on, but when I perceived how erratically she was driving, I slowed down and turned my lights and siren off. * * * The car I was operating was not in the immediate vicinity of the car operated by Pelletier at the time of the accident, nor was I in the process of attempting to stop this car at the time of the accident." When Officer Nye finally came upon the compact car, it had crashed into a cement wall, Gail was dead, and Paulette was seriously injured.

Before us, as he did before the trial justice, Paulette's father objected to defendants' motion for a summary judgment, arguing that there was a factual dispute that must be resolved. According to the father's counsel, once Officer Nye decided to have Paulette drive the Chevrolet to the police station, he had a duty to take reasonable steps so that the teenaged, unlicensed driver would not be injured.

The plight in which Paulette and her father now find themselves unquestionably invokes feelings of sympathy. However, the issue presented here is identical to the one presented in *Barratt v. Burlingham,* 492 A.2d 1219, 1221–22 (R.I.1985), where we noted that certain governmental activities engaged in by employees and officers must be free of the threat of potential litigation. With this thought in mind, the court has consistently ruled that in cases like the one presently before us, the plaintiffs must show a breach of some duty owed to them in their individual capacities and not merely the breach of some obligation owed to the public.[1] We would also emphasize that negligence is the breach of a duty the existence of which presents a question of law.

We agree with the trial justice's conclusion that Officer Nye was not obligated to transport Paulette or her companion to the station in his police car and that the officer was perfectly justified in directing Paulette to drive to the station. Although Paulette was a minor, she attempted to give Nye the impression that she indeed did have a license. In Rhode Island one attaining his or her sixteenth birthday is entitled to obtain a license to operate an automobile. Even assuming the presence of the special duty in this case, plaintiff was obligated to show that the injuries sustained by his daughter were the result of a violation of that duty.

Here the uncontradicted evidence is that Paulette's attempt to leave the scene was

---

**1.** *See Knudsen v. Hall,* 490 A.2d 976 (R.I.1985); *Orzechowski v. State,* 485 A.2d 545 (R.I.1984); *Saunders v. State,* 446 A.2d 748 (R.I.1982); *Ryan* *v. State Department of Transportation,* 420 A.2d 841 (R.I.1980).

the direct cause of the collision. Nothing in this record suggests that Officer Nye's conduct caused Paulette to embark upon or continue her high-speed escape attempt. To the contrary, the only evidence on this question is uncontradicted and comes from Officer Nye who, when he saw how erratically Paulette was driving, abandoned the chase. In fact, he was not in the immediate vicinity of the car when it struck the stone wall. Thus, far from being at fault, Officer Nye actually took evasive action that he obviously believed would avert the sort of tragedy that actually did occur.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.