Edward O'BRIEN

v.

STATE of Rhode Island.

No. 87–449–Appeal.

Supreme Court of Rhode Island.

March 6, 1989.

Raul L. Lovett, Joyce A. Farone, Lovett, Schefrin & Gallogly, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Dorothy Fobert, Asst. Atty. Gen., for defendant.

OPINION

WEISBERGER, Justice.

This is an appeal from an entry of judgment in the Superior Court in favor of the defendant on its motion for judgment on the pleadings. The facts of the case insofar as pertinent to this appeal are as follows.

On June 24, 1983, Edward O'Brien, the plaintiff, was a patron at the Lincoln Woods State Park in Lincoln, Rhode Island. As plaintiff was walking on the park premises, he tripped over a horseshoe stake or iron bar that had been embedded amid the grass in such fashion that it was not visible to him. The plaintiff commenced an action in the Superior Court alleging that the state had been negligent in its maintenance of the park premises. The statement of facts in this instance has been briefly outlined because the question presented by this appeal is solely whether the complaint and answer as having been set forth in the pleadings could survive a motion for judgment on the pleadings on the single legal issue of whether the special-duty doctrine as enunciated in *Knudsen v. Hall*, 490 A.2d 976 (R.I.1985), would bar plaintiff's action as alleged as a matter of law. We are of

the opinion that the special-duty doctrine is not applicable in this case and therefore, vacate the judgment.

In a series of cases beginning with *Ryan v. State Department of Transportation,* 420 A.2d 841 (R.I.1980), we enunciated the special-duty doctrine in a variety of contexts. In *Ryan* we held that the state through its Department of Transportation in the exercise of its licensing function did not owe a special duty to individuals to issue licenses in such a manner that they would not be injured by drivers who might have a propensity for negligent conduct. In *Saunders v. State,* 446 A.2d 748 (R.I. 1982), we held that the beneficiary of a prisoner who was murdered by certain other inmates in the prison did not have a viable action unless prison officials should have had notice that dangerous propensities on the part of the attacker would be likely to give rise to the probability of an attack upon the plaintiff's decedent as a specific identifiable victim or as a member of a group of identifiable victims. In *Orzechowski v. State,* 485 A.2d 545 (R.I.1984), we again enunciated the special-duty doctrine and determined that no special duty existed on the part of the Rhode Island Parole Board toward the victim of a paroled prisoner who was released in circumstances that the plaintiff alleged were indicative of negligence. We stated, "[t]his duty runs to the public as a whole, and not to any particular individual or class of individuals—unless special circumstances are involved that bring the plaintiff specifically into the realm of the parole board's knowledge." *Id.* at 549. Thereafter in *Barratt v. Burlingham,* 492 A.2d 1219 (R.I.1985), we were called upon to determine whether the special duty doctrine applied to the conduct of a North Kingstown police officer who had permitted a young man to drive, even though the police officer had reason to believe that the young man may have been intoxicated. An additional fact in *Barratt* was that the young man who was permitted to drive was not in fact a licensed driver, though he represented to the officer that he had a license, stating that it was not on his person. A majority of the court held that a police officer's

observation of a citizen's conduct that might foreseeably create a risk of harm to others, or the officer's temporary detention of the citizen, is not sufficient in itself to create a special relationship that imposes on the officer such a special duty. The officer's duty to the person whom he permitted to drive was not a special duty but merely a part of the duty owed to the public in general. Consequently, Barratt, who was injured after he and his friends arrived at Barratt's home and emerged again to drive further, alternating drivers at each stop, was held not to have a cause of action against the town of North Kingstown or the officer.

In that case one justice dissented from the rationale of the special-duty doctrine but concurred in the result, because he felt that there was no proximate cause in respect to the alleged injury as a result of the initial permission by the officer for Barratt to drive the automobile to his home. Barratt was injured because he continued to ride with alternating drunk drivers after he had reached his initial destination. In short, the concurring justice was of the opinion that the duty, if any, which ran from the officer to Barratt concluded upon Barratt's having reached his stated destination safely. The justice went on to suggest that we should abandon the public-duty doctrine and rely solely upon the negligence concepts of foreseeability and proximate cause. The concurring justice suggested further that by applying the public duty doctrine, we were in effect resurrecting the doctrine of sovereign immunity in spite of the fact that the Legislature by virtue of G.L.1956 (1969 Reenactment) § 9-31-1, as amended by P.L.1970, ch. 181, § 2 had mandated that the state should be liable in all actions of tort in the same manner as a private individual or corporation, subject to certain monetary limitations.

■ We are of the opinion that the special-duty doctrine does not resurrect the concept of sovereign immunity but it does take into account the unquestionable fact that many activities performed by government could not and would not in the ordi-

nary course of events be performed by a private person at all. Among such activities would be those that we have considered in our cases, such as licensing of drivers, management and parole of incarcerated prisoners, and the exercise of the police power through officers authorized and empowered by the state to perform a police function. We believe that the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person. Within this category we believe that the activity under consideration in *Knudsen v. Hall, supra,* should be included. In that case the complaint alleged that the state had negligently maintained a rural intersection and had also failed to place and replace appropriate signs at that intersection. This involved the state's duty to maintain and lay out a highway system for the benefit of all the people who may travel within the state. We held that the special-duty doctrine was applicable and that the state had no notice of the particular duty that might be owed to the plaintiffs in that case and therefore, did not have such a special duty to the plaintiffs upon which liability might be predicated.

▉ However, the state as a landowner or an owner of motor vehicles, to mention only two of its activities, performs the identical function that a private person might perform or which a private person might well parallel, and therefore, the duties of the state as landowner or owner or operator of motor vehicles should be the same as that of any private person or corporation as the Legislature has ordained in § 9–31–1.

In examining the tort liability of the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346 (West 1976), 28 U.S.C.A. §§ 2671–2678, 2680 (West 1965), as that act might be applicable to the Texas City disaster, the majority of the Court in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), sought to determine the intent of Congress in making the federal government liable as a private person would be. The Court considered the legislative history of the act and concluded that uppermost in the collec-

tive mind of Congress were the ordinary common law torts. The Court observed in accordance with the debates that one of the goals frequently mentioned by members of Congress was to make the United States liable for negligence in the operation of vehicles. This was, of course, but one example. Moreover, the Court from the specific provisions of the Federal Tort Claims Act held that an action would not lie for the negligent performance of a discretionary act, whether or not the discretion may have been abused. In dissent, Justice Jackson would have given a more expansive reading to the intent of Congress in passing the Tort Claims Act and would have held the government liable for the manufacture of a type of fertilizer that was inherently dangerous owing to its extreme inflammability, particularly when closely packed as part of the cargo of an oceangoing vessel.

Justice Jackson sought to develop a distinction between the type of activities for which the government might be held liable and those for which it might not. He suggested the following distinctions:

"When an official exerts governmental authority in a manner which legally binds one or many, he is acting in a way in which no private person could. Such activities do and are designed to affect, often deleteriously, the affairs of individuals, but courts have long recognized the public policy that such official shall be controlled solely by the statutory or administrative mandate and not by the added threat of private damage suits. * * * The official's act might inflict just as great an injury and might be just as wrong as that of the private person, but the official is not answerable. The exception clause of the Tort Claims Act protects the public treasury where the common law would protect the purse of the acting public official.

"But many acts of government officials deal only with the housekeeping side of federal activities. The Government, as landowner, as manufacturer, as shipper, as warehouseman, as shipowner and operator, is carrying on activities indistinguishable from those performed

**338**

by private persons. In this area, there is no good reason to stretch the legislative text to immunize the Government or its officers from responsibility for their acts, if done without appropriate care for the safety of others." *Dalehite,* 346 U.S. at 59–60, 73 S. Ct. at 980, 97 L. Ed. at 1453.

Justice Jackson's comments on the interpretation of the Federal Tort Claims Act which is not identical to the Rhode Island Tort Claims Act but bears some similarity thereto, may be of interest in resolving the dilemma presented by the facts of the present case.

■■■ We are of the opinion that the state as landowner or park operator is acting as a private person might act who was the owner of land and who charged a fee to those who might come upon that land. That duty in accordance with recognized tort principles would be to maintain the property in a reasonably safe condition for the benefit of those persons who might come upon the land. *See, e.g., Cutroneo v. F.W. Woolworth Co.,* 112 R.I. 696, 315 A.2d 56 (1974); *Molinari v. Sinclair Refining Co.,* 111 R.I. 490, 304 A.2d 651 (1973); *Gonsalves v. First National Stores, Inc.,* 111 R.I. 438, 304 A.2d 44 (1973); *Dawson v. Rhode Island Auditorium, Inc.,* 104 R.I. 116, 242 A.2d 407 (1968). The foregoing cases stand for the proposition that a landowner or the owner of premises to which the public may be invited has a duty of maintaining the premises in reasonably safe condition for the benefit of those who may come upon the land or premises, but that individual is not an insurer of the safety of the members of the public who are present on the land or premises. For purposes of the present case we are not dealing, nor do we purport to deal, with distinctions between licensees, invitees, and trespassers, which were eliminated by *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975).

■■■ We should note that this opinion does not rely upon the frequently Byzan-

tine distinctions between governmental and proprietary functions.[1] That distinction arose out of a common-law doctrine under which municipal corporations were liable in tort for activities performed in their proprietary capacities but not for activities defined as governmental functions. *See, e.g., Barroso v. Pepin,* 106 R.I. 502, 261 A.2d 277 (1970); *Nunes v. Town of Bristol,* 102 R.I. 729, 232 A.2d 775 (1967); *Karczmarczyk v. Quinn,* 98 R.I. 174, 200 A.2d 461 (1964); *Wroblewski v. Clark,* 88 R.I. 235, 146 A.2d 164 (1958); *Gibbons v. Fitzpatrick,* 56 R.I. 39, 183 A. 642 (1936). Since the doctrine of sovereign immunity has been abrogated in respect both to municipalities and to the state, the former distinction between proprietary and governmental functions no longer is either controlling or of significant assistance in determining the liability of a municipality or the state under our current Tort Claims Act. When we analyze whether an activity would be performed by a private person so as to bring it within the provisions of § 9–31–1, our analysis is functional rather than abstract. We inquire whether this is an activity that a private person or corporation would be likely to carry out. If the answer is affirmative, then liability will attach. Although this analysis may bear some analogy to the governmental-function test, it is far simpler and less complex in implementation.

■■■ Moreover, in the present case we do not purport to determine the responsibility of the state in respect to the iron stake or horseshoe stake that was allegedly embedded in the ground. Nor do we purport to consider by whom the stake was inserted or whether such person was or might be inferred to be an employee of the state. All that we are holding today is that in the event that (1) the presence of the stake in the location where it was placed was a negligent act and (2) that negligent act was performed by an employee of the state and would have subjected a private person to

1. There seems little doubt that under our prior cases dealing with municipal liability the maintenance of recreational facilities such as a swimming pool (even though a fee was charged), *Maio v. Ilg,* 98 R.I. 71, 199 A.2d 727 (1964) or a park (even though incidental profits are derived

therefrom), *Blair v. Granger,* 24 R.I. 17, 51 A. 1042 (1902), would be regarded as governmental rather than proprietary functions. Nevertheless, maintenance of a swimming pool or a park is an activity in which a private person or corporation might well engage.

liability in the circumstances, then the state under our Tort Claims Act would also be responsible for the injury caused.

We realize that in our prior cases, the distinction between acts for which the state might be responsible and acts for which it might not be, were not clearly delineated. As a consequence, the trial justice was undoubtedly quite justified in dismissing this complaint under the doctrine enunciated in *Knudsen v. Hall, supra.* Nevertheless, as we consider the cases in the light of the statute that was designed to abrogate sovereign immunity, we are of the opinion that this distinction, which we draw in the present case and which we may draw in future cases, is necessary to clothe the act with the effectiveness that the Legislature intended to achieve in enacting it.

A similar result has been reached in the case of *Catone v. Medberry*, 555 A.2d 328 (R.I.1989).

For the reasons stated, we vacate the judgment that dismissed the complaint in the case at bar and remand the papers in the case to the Superior Court for further proceedings not inconsistent with this opinion.

KELLEHER, J., did not participate.