[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a civil action in which the plaintiffs claim compensatory and exemplary damages from several defendants. The defendant, Maurice Paradis, is sued in three ways: first, in his own right; second, "individually and in his capacity as director of the Rhode Island Department of Business Regulation"; and third, "individually and in his capacity as receiver of Rhode Island Central Credit Union"; according to the caption of the plaintiffs' complaint. The Department of Business Regulation (DBR) is an agency of the executive branch of State government.G.L. 1956 (1993 Reenactment) § 42-14-1. He moves to dismiss so much of the complaint against him as asserts that he is liable in damages for his conduct as director of DBR on the ground that it fails to state a claim. R.I.R. Civ. Proc. 12(b)(6).
On January 1, 1991 the governor proclaimed that a banking emergency existed and subjected Rhode Island Central Credit Union (RICCU) subject to special regulation pursuant to § 19-18-1.
Pursuant to special regulation issued by the governor and the director, RICCU was ordered to cease doing business. At the time the plaintiffs had $206,107.87 on deposit at RICCU and they owed RICCU $203,170.30. Their debt to the credit union was secured by mortgages on their home in Warwick and on commercial property they owned, also in Warwick. On March 27, 1991, the director was appointed temporary receiver of RICCU by this Court. His temporary appointment was made permanent on May 31, 1991. On June 24, 1992, he transferred both the plaintiffs' loan account and their savings deposits to the newly-created Depositors Economic Protection Corporation (DEPCO).
The only material period of time during which, according to the complaint, this defendant exercised any control over the plaintiffs' accounts with the credit union in his capacity as director of DBR was between January 1, and March 27, 1991. The plaintiffs allege that during that period of time they ". . . made several requests to DBR to authorize RICCU to set off their savings accounts in payment of their outstanding loans and release (the outstanding mortgages)." They further allege: "DBR did not definitively respond to (the plaintiffs') request."
The plaintiffs argue that based on his emergency assumption of control of RICCU, as director of DBR, during the period from closing on January 1, 1991 until his appointment as receiver on March 27, 1991, the director had an equitable duty to set-off the plaintiffs' deposits against their indebtednesses. In support of this claim they cite Scott v. Armstrong, 146 U.S. 499 (1892);FDIC v. Mademoiselle of California, 379 F.2d 660, 663 (9th Cir. 1967); and Seattle-First Nat'l Bank v. FDIC, 619 F. Supp. 1351, 1358 W.D. Okla. 1985), all of which affirm a depositor's right of set-off against indebtedness. They also claim that the right of set-off is fixed at the time of the insolvency of the bank, citing Yardley v. Philler, 167 U.S. 344 (1897), Dakin v.Bagly, 548 Ct. 113 (1933); and Hibernia Nat'l Bank v. FDIC,733 F.2d 1403, 1407 (10th Cir. 1984).
The Defendant argues that this existence of a right to set-off is not material to the defendant's liability, because what is at issue here is not whether the plaintiffs were entitled to set-off but rather when and by whom it was to be recognized and applied. During the period in question the credit union, itself, was closed because of the emergency and was under the regulatory control of the director. It was powerless to do anything about the plaintiffs' set-off. No receiver had yet been appointed to manage the liquidation of the credit union under provisions of P.L. 1991, ch. 3 (Rhode Island Depositors Economic Protection Act). Nor had the Rhode Island Depositors Economic Protection Corporation (DEPCO), established by that Act to remedy the economic crisis caused by the failure of the Rhode Island Share and Indemnity Corporation (RISDIC), yet taken over the assets and liabilities of the credit union from its receiver.
The suspension of the credit union's business under §§19-18-1 and 19-8-2 is plainly an emergency exercise of the purest kind of governmental power. The suspension was of relatively short duration. During the temporary emergency suspension period from January 1 to March 27, 1991, the director was exercising the clearest kind of discretionary emergency regulatory power.
It is well established that a claim against a State official in his official capacity is a claim against the State, itself.Will v. Michigan, 491 U.S. 58 (1989). It is precisely this kind of discretionary governmental conduct which has consistently been held to be immune from private claims for money damages in a civil action. Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989); O'Brien v. State, 555 A.2d 334, 337 (R.I. 1989). This immunity was confirmed In Re Advisory Opinion to the Governor(DEPCO), 593 A.2d 943, 953 (R.I. 1991). So far as this is a tort claim against the State, or a State official in his official capacity, the State and the official defendant are both immune.
In two counts of their complaint the plaintiffs allege that they have been deprived of property rights protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Rhode Island Constitution. The claim under Federal law is authorized by 42 U.S.C. § 1983. Rhode Island has no cognate legislation, although claims arising under § 1983 may be litigated in this Court. Will v. Michigan, supra, is dispositive. So far as this is a claim under § 1983, it must be dismissed. This Court is further satisfied that the State, and its officers acting in an official capacity, enjoy a qualified immunity as a matter of law, since the director's conduct violated no clearly established statutory or constitutional rights of these plaintiffs of which any reasonable person would have known. Mitchell v. Forsyth, 472 U.S. 511, 528-30, 105 S. Ct. 2806, 2816-17, 86 L.Ed.2d 411, 426-27 (1985).
Accordingly, the motion of MAURICE PARADIS, in his capacity as Director of the Department of Business Regulation of the State of Rhode Island, to dismiss the plaintiffs' complaint against him in that capacity will be GRANTED.