[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision following a non-jury trial on a complaint by Walter R. Simpson (Plaintiff) against the Rhode Island Department of Corrections (Defendant). In this negligence action, Plaintiff seeks to recover damages for injuries sustained as a result of an assault by a fellow prison inmate. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 FACTS AND TRAVEL
Pro se Plaintiff Walter Simpson is an inmate at the Adult Correctional Institute in Cranston, Rhode Island On July 9, 1999, Plaintiff sent a request form to Director George Vose, stating that he would not engage in outdoor recreation until corrective action was taken concerning prisoners being attacked and assaulted by other inmates, which Plaintiff claimed was planned and coordinated by Vose's employees, agents, and other prisoners. Plaintiff claimed that the prisoners were being assaulted while handcuffed behind their backs. On September 21, 1999, Plaintiff sent a request form to Lieutenant Nakey and Deputy Caruso to "investigate a planned and coordinated assault being put in effect to cause me harm by your agents telling inmate in cell E #4 to attack and assault myself in hand-cuffs in E-module court-yard. Please investigate and take corrective action." Request Form of Walter R. Simpson, Plaintiff's Exhibit 6.
On September 22, 1999, at approximately 7:45 a.m., Plaintiff and fellow inmate Robert Ceraolo were brought to the E courtyard for recreation. Both inmates had been strip searched and were handcuffed behind their backs. Correctional Officer Robert Dennett removed Ceraolo's handcuffs first, and Ceraolo immediately began punching Plaintiff, who was still handcuffed. A "code blue" was called, and responding correctional officers arrived to assist Dennett in restraining the inmates. The inmates were then escorted back to their cells and seen by a nurse. Plaintiff required medical attention and was taken to Rhode Island Hospital, where he was diagnosed with a corneal abrasion on his left eye and a laceration on his lower lip.
Plaintiff initiated this instant action claiming that his injuries were caused by the Department of Corrections' (Defendant) negligence in (1) failing to protect the Plaintiff from assaults of other prisoners; (2) failing to take actions to curb the known pattern of attacks on prisoners; and (3) failing to examine Plaintiff's infected lip and provide treatment. This case was tried without a jury on November 12 and 13, 2003.
 STANDARD OF REVIEW
Rule 52(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Super. R. Civ. P. 52(a). In accordance with this authority in a non-jury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citing Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id.; see also Rodriques v.Santos, 466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact). When rendering a decision in a non-jury trial, the Rhode Island Supreme Court has interpreted Rule 52(a) to mean that "the trial justice need not engage in extensive analysis to comply with this requirement."White v. Le Clerc, 468 A.2d 289, 290 (R.I. 1983). Thus, "even brief findings will suffice as long as they address and resolve the controlling factual and legal issues." Id.
 NEGLIGENCE
Plaintiff argues that the Department of Corrections is negligent because it failed to protect him from an assault, which he had warned prison officials would happen. Plaintiff also argues that he was denied sufficient medical care. Alternatively, Defendant presented evidence that the officers responded immediately to the scene to separate the inmates. Correctional Officers Robert Dennett and Nicholas Violante testified that they neither had personal knowledge that the attack would occur, nor allowed the attack to occur. Defendant also presented evidence that the officers acted in a timely manner in response to the "code blue" and that Plaintiff received appropriate medical attention.
"To succeed on a claim for negligence, `a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" Mills v. State Sales, Inc., 824 A.2d 461, 468 (R.I. 2003) (quoting Jenard v. Halpin, 567 A.2d 368, 370 (R.I. 1989)). "[P]rison officials owe a duty of ordinary or reasonable care to safeguard prisoners in their custody or control from attack by other prisoners." Saunders v. Rhode Island,446 A.2d 748, 750 (R.I. 1982) (citations omitted). "[T]his duty to provide reasonable care to protect an inmate from violence would not be violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by the prison official." Id. at 751. If liability is to accrue, the prison officials should have had notice "that these dangerous propensities would be likely to give rise to an attack upon [plaintiff] as a specific identifiable victim or as a member of a group of identifiable victims." Id. "The identification of a specific individual as a potential victim would give rise to a special duty on the part of the officials to take reasonable steps to prevent an attack." Orzechowski v. State,485 A.2d 545, 548 (R.I. 1984).
Plaintiff has failed to present sufficient evidence that Defendant breached its duty of care. The facts are undisputed that Plaintiff was attacked by Robert Ceraolo. Plaintiff, however, has failed to make a showing that the Defendant had reason to know that inmate Ceraolo was going to assault him. Plaintiff testified at his deposition that he had never had any words or problems with inmate Ceraolo prior to the attack. The only time Plaintiff had a conversation with him was once, some five years previous to the attack. Plaintiff's trial testimony lacked credibility, as it was inconsistent with his deposition testimony, ultimately leaving it unclear whether there was an actual threat against Plaintiff. Further, neither Marylyn Grejdus, R.N., nor Jahmal (sic) Abercrombie and Wayne Lee could corroborate or otherwise support Plaintiff's contentions. Nurse Grejdus had no specific memory of the date or event in question. Abercrombie and Lee, both seemingly forthcoming, could contribute nothing relative to the instant complaint.
Defendant also presented credible evidence that the correctional officers responded quickly to the scene after the "code blue" was called and that Plaintiff received immediate medical attention. At the same time, Plaintiff failed to present any evidence that Defendant was negligent in rendering treatment to him. Accordingly, Plaintiff has failed to meet his burden of proving that Defendant was negligent in failing to protect him from assaults by other prisoners and in denying him medical care.
 CONCLUSION
After review of the entire record, the Court finds that the Plaintiff failed to carry his burden in showing by a clear preponderance of evidence that the Defendant was negligent. Accordingly, judgment shall enter for the Defendant.
Counsel shall submit appropriate judgment for entry in accordance with this decision.