This is an interlocutory appeal, under Rule 5, A.R.A.P., from the circuit court order denying the motion for summary judgment of two members of the Board of Pardons and Paroles who claimed immunity under state and federal law from liability for the criminal acts of a parolee.
In 1967, Arthur Jones was charged with assault with intent to murder, murder in the first degree, robbery, and arson in the first degree. In addition to these charges, Jones had four burglary convictions, a disorderly conduct conviction, and two burglary charges outstanding. In a March 1970 plea bargain agreement, Jones pleaded guilty to the robbery charge and received a sentence of life imprisonment. Jones then became eligible for parole on or after March 27, 1978.
At the time of Jones's parole eligibility in 1978, Sara Sellers, John T. Porter, and William Robinson were the members of the Alabama State Board of Pardons and Paroles *Page 461 
(the Board). Sellers and Porter became Board members in 1975 and 1977, respectively. On June 26, 1978, Sellers and Porter voted to parole Jones, based upon a review of reports on his personal and social background, his prior offenses, his present offense, and the recommendations of various prison officials. Robinson cast the sole vote to deny Jones's parole. At the time of their votes, no psychiatric report on Jones's mental condition existed.
Jones was paroled on June 26, 1978, and was released from active supervision on February 2, 1980. Jones was subsequently charged with the September 14, 1981, robbery and murder of Gregory V. Thompson, a Spanish Fort store clerk. Jones was convicted of this capital murder and sentenced to death on January 29, 1982. At the time of this conviction, Jones was also charged with the August 17, 1981, robbery and murder of William H. Weyman, a Mobile taxi cab driver.
Tonya Thompson, the wife of the deceased Gregory Thompson, filed suit against individual Board members Sellers, Porter, and Robinson.[1] The final amended complaint contained the following allegations: 1) Sellers, Porter, and Robinson, while acting within the scope of their authority, negligently paroled Jones, proximately causing fatal injuries to her husband; 2) Sellers, Porter, and Robinson, while acting within the scope of their authority, wantonly paroled Jones, proximately causing fatal injuries to her husband; 3) Sellers, Porter, and Robinson exceeded their statutory authority in paroling Jones, proximately causing fatal injuries to her husband; and 4) Sellers, Porter, and Robinson, while acting under color of state law, deprived her husband of his life and liberty without due process of law, in violation of 42 U.S.C. § 1983.
The Board members filed a motion for summary judgment, which was granted on behalf of Robinson, who had voted against parole, but which was denied with respect to Sellers and Porter. The circuit court certified its order in accordance with Rule 5, A.R.A.P. This Court granted the petition by Sellers and Porter for permission to appeal this interlocutory order.
To determine whether the circuit court erred in denying the motion for summary judgment on behalf of Sellers and Porter, we must address the following subsidiary issues: 1) whether Code 1975, § 15-22-25, imposed a non-discretionary duty upon Board members Sellers and Porter to obtain and review a psychiatric report on Jones prior to their ultimate discretionary parole decision, thereby precluding their invocation of discretionary function immunity under Ala. Const. art. I, § 14; and 2) whether Sellers and Porter are also afforded immunity from suit under the federal Civil Rights Act of 1871, 42 U.S.C. § 1983.
Neither party disputes the fact that under our holding inGill v. Sewell, 356 So.2d 1196 (Ala. 1978), the Board members' ultimate decision to grant or deny parole constitutes the exercise of a discretionary function within the ambit of the immunity shield of Ala. Const. art. I, § 14.[2] Sellers *Page 462 
and Porter may thus invoke this discretionary function immunity to preclude personal liability for their allegedly negligent or wanton parole of Jones,[3] and summary judgment should have been granted in their behalf as to these allegations of Thompson's final amended complaint.
Yet the point of departure in the Gill opinion — the failure to allege that a state official sued in his individual capacityexceeded his statutory authority so as to preclude his invocation of this immunity shield — is precisely the question presently before us. We must determine whether Code 1975, §15-22-25, imposes a non-discretionary duty upon Board members to obtain and review a psychiatric report on prospective parolees prior to making their ultimate discretionary parole decision.
Section 15-22-25, Code 1975, prescribes the investigative procedure which the Board of Pardons and Paroles follows prior to a parole decision:
 "(a) As to each prisoner sentenced and received in the jails and prisons of the state of Alabama, it shall be the duty of the board of pardons and paroles, while the case is still recent, to cause to be obtained and filed information as complete as may be obtainable at that time with regard to each such prisoner. Such information shall include a complete statement of the crime for which he is then sentenced, the circumstances of such crime, the nature of his sentence, the court in which he was sentenced, the name of the judge and district attorney and copies of such probation reports as may have been made as well as reports as to the prisoner's social, physical, mental and psychiatric condition and history. It shall be the duty of the clerk of the court and of all probation officers and other appropriate officials to send such information as may be in their possession or under their control to the board upon request. The board shall also at that time obtain and file a copy of the complete criminal record of such prisoner that may exist. When all such existing available records have been assembled, they shall be presented to the board or to some officer designated by it, who shall determine whether any further investigation of such prisoner is necessary at that time and, if so, the nature of such investigation, and the board shall thereupon order it to be made. Such investigation shall be made while the case is still recent, and the results of it with all other information shall be filed in the office of the board so as to be readily available when the parole of such prisoner is being considered.
 "(b) The board shall not act on any application or case until a complete investigation of the prisoner's social and criminal record has been made by a parole officer and a written report thereof made a part of the prisoner's file."
Sellers and Porter contend that their decision to parole Jones without first obtaining and reviewing his psychiatric profile was clearly within the protections of the discretionary function immunity shield. In support of this proposition, the Board members posit three arguments:
First, they contend that Code 1975, § 15-22-25, only requires that "existing available records" be assembled. Thus, because no psychiatric report on Jones existed, the Board members conclude that they were under no duty to obtain such a report.
Second, the Board members argue that even if such a duty exists, the duty only embraces individuals who serve on the Board while the prisoner's case "is still recent." Because Jones's 1970 case was no longer "recent" when Sellers and Porter became Board members in 1975 and 1977, respectively, the Board members contend that such a duty did not extend to them. *Page 463 
Finally, the Board members argue that because only a written report of the prisoner's social and criminal record must be included in the prisoner's file before the actual parole decision, they were under no duty to obtain or review a psychiatric report on a prospective parolee.
Thompson contends, however, that the mandatory language "[s]uch information shall include . . . reports as to the prisoner's . . . psychiatric condition and history" clearly imposes a nondiscretionary duty upon the Board members to obtain and review such a report prior to their ultimate parole decision. Because Sellers and Porter exceeded this statutory authority in failing to obtain and review such a report before paroling Jones, Thompson concludes that they are precluded from invoking the discretionary function immunity shield.
We do not read § 15-22-25 to require a psychiatric evaluation of a prisoner before the Board may act on his request for parole. So far as we can ascertain from the record, a psychiatric evaluation was never made on this prisoner, and apparently no report on his mental condition exists. The statute requires the Board to obtain and file "information as complete as may be obtainable." This statute also provides that when "all such existing available records have been assembled," they shall be presented to the Board or to some officer designated by it, who shall determine whether any further investigation is necessary. Arguably, the statute could be read to authorize the Board, assuming it had the means to do so, to cause a psychiatric evaluation to be made, but that does not necessitate the conclusion that the Board members have violated the statute because they failed to order an evaluation. To hold otherwise would require the Board to have or procure a psychiatric report on all inmates who could be considered for parole. We do not think the legislature intended this result.
Sellers and Porter are therefore immune under Ala. Const. art. I, § 14, from personal liability for exercising a discretionary function in paroling Jones without first obtaining and reviewing a psychiatric report on him, and they are also entitled to judgment as a matter of law as to this allegation of Thompson's final amended complaint.[4]
We must now determine whether Sellers and Porter are also afforded immunity from suit under the federal Civil Rights Act of 1871, 42 U.S.C. § 1983.[5] This question has recently been addressed in two federal cases.
In Pate v. Alabama Bd. of Pardons and Paroles, 409 F. Supp. 478
(M.D.Ala. 1976), aff'd, 548 F.2d 354 (5th Cir. 1977), the members of the Alabama Board of Pardons and Paroles were given immunity from suit under 42 U.S.C. § 1983 by virtue of the Eleventh Amendment to the United States Constitution and the doctrine of official immunity. Comparing the function of the Board of Pardons and Paroles to that of a judge imposing sentence or granting or denying probation, the district court concluded that the present system of rehabilitation would be virtually emasculated absent such an immunity.
Moreover, in Martinez v. California, 444 U.S. 277,100 S.Ct. 553, 62 L.Ed.2d 481, reh'g denied, 445 U.S. 920,100 S.Ct. 1285, 63 L.Ed.2d 606 (1980), the United States Supreme Court held that California officials responsible for the release of a parolee who murdered a fifteen-year old girl *Page 464 
only five months thereafter were immune from liability under42 U.S.C. § 1983 due to the absence of state action. The Court reasoned that the decedent's death was too remote a consequence of the parole officials' act to hold them responsible under the federal civil rights law.
Under the authority of the Pate and Martinez decisions,[6] we hold that the Board members who voted to parole Jones are likewise immune from personal liability under 42 U.S.C. § 1983. It was therefore error for the trial court to deny summary judgment in their behalf on the § 1983 claim also.
The order of the circuit court denying the motion for summary judgment on behalf of Sara Sellers and John T. Porter is reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur.
[1] Although Thompson also included as defendants the State of Alabama and the State Board of Pardons and Paroles, these defendants were later dismissed from the lawsuit on the motion of Thompson.
In a second amended complaint, Thompson added Jones as a defendant and alleged that he wantonly caused the death of her husband. Because Jones did not file a motion for summary judgment, the claim against him remains pending in circuit court.
[2] Article I, § 14 of the Alabama Constitution prohibits the State and its agencies from being made defendants to a suit. Section 14 does not, however, necessarily immunize State officials and agents from individual civil liability. Finnellv. Pitts, 222 Ala. 290, 132 So. 2 (1930).
In Gill v. Sewell, 356 So.2d 1196, 1198 (Ala. 1978), we construed § 14 to prohibit suit against the Commissioner of the State Board of Corrections in his individual capacity where the complaint alleged only negligent performance of a statutory duty in transferring a dangerous felon to a minimum security institution. Later, we clarified the Gill holding, consistent with the Restatement (Second) of Torts, § 895D, Public Officers (1974), by determining that the Commissioner was immune from individual tort liability because he was engaged in the exercise of a discretionary function. DeStafney v. Universityof Alabama, 413 So.2d 391 (Ala. 1982) (on rehearing).
[3] In Deal v. Tannehill Furnace Foundry Comm'n, 443 So.2d 1213
(Ala. 1983), we expanded the scope of discretionary function immunity to include allegations of wantonness on the part of State officials sued in their individual capacities where, as here, there was no evidence of bad faith on the part of the officials.
[4] We note that Thompson's reliance upon Payton v. UnitedStates, 679 F.2d 475 (5th Cir. 1982), is misplaced. Payton
involved the breach of a statutory duty on the part of the Bureau of Prisons to provide the parole board with existing
records on a prospective parolee — clearly not the issue in this case.
[5] This statute provides that
 "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
[6] In light of these decisions, we decline to address the doctrine of qualified immunity, recently articulated in Harlowv. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396
(1982).