I respectfully dissent for the reasons set out below.
 I
Initially, I am awestruck by the majority's incredible position that the powers of the Alabama Board of Pardons and Paroles under Code 1975, §§ 15-22-1, et seq., are to be interpreted by decisions of foreign courts, speaking to statutes enacted in foreign jurisdictions. With all due deference to New York, I fail to see how an interpretation of New York's temporary release program has any bearing on the ability of the Alabama Board of Pardons and Paroles to revoke a legally executed parole where the prisoner has already been released from custody. I would prefer to look to Alabama's statutory law.
Second, Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064,76 L.Ed.2d 221 (1983), leaves no doubt that, once released fromprison, a parolee has a liberty interest which attaches, commanding a due process hearing before a revocation of that parole. Due process requires that a parolee be apprised of any violations of parole conditions before a hearing is held. In this case, Ellard was not notified of any violations, as there were none charged.
 II
The writ of certiorari was issued in this case in order to review the Court of Criminal Appeals' decision upholding the Board of Pardons and Paroles' revocation of Richard Mark Ellard's parole. I would reverse.
The dispositive facts of this case are adequately set out in the opinion of the Court of Criminal Appeals. Additionally, petitioner properly submits an ARAP 39 (k) statement, the pertinent provisions of which are summarized below.
Mark Ellard was incarcerated in the Alabama prison system pursuant to a life sentence for murder and a twenty year sentence for assault with intent to murder. On 8 December 1980, Parole Officer Thomas Tate evaluated the social, criminal, and custodial record of Mark Ellard and recommended that he be paroled. The Board met with Ellard on 15 December 1980, interviewed him, and later reviewed the Parole Board file. In addition to the parole evaluations and social histories made at the time of his sentencing, the file included reports on the nature of his crimes and his activities *Page 764 
on escape in 1977, as well as documents from classification officers, work supervisors, and the Warden of Holman Prison recommending that Ellard be paroled.
Based upon its investigations, evaluations, and interviews, the Board issued Ellard a Certificate of Parole. Additional factors established by petitioner's ARAP 39 (k) statement shall be considered below in light of their relevance to the issues presented.
The essential issue presented by this case is whether the Board of Pardons and Paroles, upon reconsideration, may revoke a legally executed parole where the parolee has not violated any terms or conditions of that parole. To reach this issue, however, it is first necessary to determine whether the actions of the Board, in this case, constituted a legal issuance of Ellard's parole.
The Court of Criminal Appeals upheld the Board's revocation of Ellard's parole based on a finding that "certain substantial and legal evidence" pertaining to Ellard was not considered by the Board on its initial review. Therefore, the Court of Criminal Appeals concluded, under Code 1975, §§ 15-22-25 and15-22-40, the Board's execution of Ellard's parole was null and void. In so finding, that court erred in its interpretation of the requirements of § 15-22-25.
Code 1975, § 15-22-25, provides:
 "§ 15-22-25. Investigation and report on sentenced prisoner's social and criminal records.
 "(a) As to each prisoner sentenced and received in the jails and prisons of the state of Alabama, it shall be the duty of the board of pardons and paroles, while the case is still recent, to cause to be obtained and filed information as complete as may be obtainable at that time with regard to each such prisoner. Such information shall include a complete statement of the crime for which he is then sentenced, the circumstances of such crime, the nature of his sentence, the court in which he was sentenced, the name of the judge and district attorney and copies of such probation reports as may have been made as well as reports as to the prisoner's social, physical, mental and psychiatric condition and history. It shall be the duty of the clerk of the court and of all probation officers and other appropriate officials to send such information as may be in their possession or under their control to the board upon request. The board shall also at that time obtain and file a copy of the complete criminal record of such prisoner that may exist. When all such existing available records have been assembled, they shall be presented to the board or to some officer designated by it, who shall determine whether any further investigation of such prisoner is necessary at that time and, if so, the nature of such investigation and the board shall thereupon order it to be made. Such investigation shall be made while the case is still recent, and the results of it with all other information shall be filed in the office of the board so as to be readily available when the parole of such prisoner is being considered.
 "(b) The board shall not act on any application or case until a complete investigation of the prisoner's social and criminal record has been made by a parole officer and a written report thereof made a part of the prisoner's file."
Furthermore, the above section is supplemented by Code 1975, §15-22-40, which states:
"§ 15-22-40. When pardon, etc., null and void.
 "Any pardon, parole, remission of a fine or forfeiture or restoration of civil and political rights granted, ordered or made contrary to the provisions of this article shall be null and void and shall have no force or effect."
The State argues, and the Court of Criminal Appeals found, that the Board's action was null and void for failure to consider: (1) a psychological report on Ellard; (2) evidence of misconduct and criminal activity while Ellard was on escape in 1977; (3) *Page 765 
an escape attempt in 1971; and (4) considerable public opposition to Ellard's parole.
In Sellers v. Thompson, 452 So.2d 460 (Ala. 1984), this court found that the requirements of Code 1975, § 15-22-25, did not necessitate the review of a psychiatric report on all inmates to be considered for parole.
In contrast to Sellers, a psychological report on Ellard was in existence. Nevertheless, I do not read Code 1975, §15-22-25, to require the physical examination of every extant document relevant to a prospective parolee. To so hold would be both to require an omniscient Parole Board and to question the legality of every current and future parole.
On this point I note that the Board considered the report of Parole Officer Thomas Tate, dated 8 December 1980, which catalogs Ellard's criminal offenses, sentences, and prison record. Also before the Board, inter alia, were the supplementary reports compiled by Parole Officer Frank Fendley, of Oneonta, Alabama, in September 1972; the report of Parole Officer Winfred Smithson of Jefferson County, Alabama, in November 1972; and the report of Georgia Parole Investigator Lee Robinson on 26 May 1976. Additionally, Ellard's file included reports on the nature of his crimes and activities while on escape in 1977, as well as documents from classification officers, work supervisors, and the warden of Holman Prison. Accordingly, I find the Board considered a complete investigation of Ellard's social and criminal record before granting him parole, and thereby satisfied the provisions of Code 1975, § 15-22-25.
Regarding the public opposition to Ellard's parole, I opine that public opinion is neither required by law to be considered by the Board, nor relevant in any way to a proper parole determination. In fact, the very genesis of Code 1975, §§15-22-1, et seq., is the intention to isolate the pardon and parole process from political concerns. See "Report of theSpecial Legislative Committee Investigating Pardons andParoles", Special Session (1951).
On alternative grounds, the Court of Criminal Appeals found that the Board lacks the statutory authority to parole an inmate from an Alabama sentence where that prisoner is subject to a foreign jurisdiction's detainer for custody and sentencing. Therefore, that court concluded, the Board's action in paroling Ellard to Georgia's custody was null and void, warranting revocation. That is an erroneous conclusion.
As aptly pointed out by the amicus curiae, such a conclusion would base an inmate's eligibility for parole not upon the criteria established by the legislature under Code 1975, §15-22-26, but, rather, upon the terms of a sentence imposed by a court in a foreign jurisdiction. There is no support for this proposition.
To the contrary, Code 1975, § 15-22-36 (a), affirmatively vests the following powers in the Board:
 "(a) In all cases, except treason and impeachment and cases in which sentence of death is imposed and not commuted, as is provided by law, the board of pardons and paroles shall have the authority and power, after conviction and not otherwise, to grant pardons and paroles and to remit fines and forfeitures." (Emphasis added.)
Thus, unless there is a specific statutory exclusion, the Board has the authority to determine parole eligibility. Although the Court of Criminal Appeals implies to the contrary, Code 1975, § 15-22-27, does not exclude from parole consideration those inmates who may be subject to a detainer from another jurisdiction. That section merely grants to the Board certain powers in addition to its power to grant pardons and paroles. It provides that the Board may, at its option, transfer an inmate to another jurisdiction without paroling him from the sentence imposed by an Alabama court. It by no means prohibits or otherwise limits the Board from exercising its power to parole an inmate pursuant to Code 1975, § 15-22-36
(a). *Page 766 
In a collateral argument, the State contends Ellard was never paroled, but merely transferred to Georgia's custody pursuant to Code 1975, § 15-22-24 (i). This is a frivolous argument, in that every relevant document, including a signed and sealed Certificate of Parole, indicates that Ellard was to be paroled, not transferred.
Based upon the foregoing, I would hold the petitioner was awarded a legally executed parole by the Board. It is undisputed that Ellard has not violated any of the conditions of that parole. Thus, I turn my attention to whether the Board, in the absence of any parole violations, is empowered to reconsider and revoke a legally executed parole after the inmate has been released.
There is no provision under Alabama law, the regulations of the Board, or the terms of petitioner's Certificate of Parole, authorizing the Board to reconsider a parole in the absence of any parole violation. Code 1975, § 15-22-32, provides for declaring a parolee delinquent, but only where "there is reasonable cause to believe that a prisoner who has been paroled has violated his parole." Furthermore, Code 1975, §15-22-29, provides that a parolee may be liable for arrest and imprisonment after a violation of any parole condition. A statutory power to reopen and reconsider a parole after an inmate's release, however, can hardly be gleaned from the above code sections in the absence of any parole violations.
Neither do I find the Board vested with any inherent or implied power to reconsider paroles where no violation has occurred. Such a construction would be in clear abrogation of the restrictions set out in Code 1975, § 15-22-38, which states:
 "The duties imposed upon the members of the board of pardons and paroles by this article are mandatory, and the limitations and restrictions on the powers of the board or the members thereof shall be strictly construed."
(Emphasis added.)
In any event, for the Board to now reopen and reconsider Ellard's parole, in the absence of any parole violations, and without authority under statute, regulation, or Certificate of Parole conditions, would be an act so arbitrary and capricious as to violate the due process clause of the United States Constitution. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593,33 L.Ed.2d 484 (1972); See Bearden v. Georgia, 461 U.S. 660,103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
Accordingly, I would hold that the Board was without legal authority to reconsider a legally executed parole in the absence of any parole violations. Consequently, I would hold the Board's "revocation" of Ellard's parole is null and void. The judgment of the Court of Criminal Appeals is due to be reversed.
JONES, ALMON and BEATTY, JJ., concur.