479 So.2d 1188 (1985)
Julia Cook DONAHOO, as executrix of the estate of Thurman Macon Donahoo, Sr., deceased
v.
STATE of Alabama, et al.
84-159.
Supreme Court of Alabama.
September 27, 1985.
Rehearing Denied November 8, 1985.
Robert H. Ford of Brinkley & Ford, Huntsville, John B. Crawley of Crawley & Jarrell, Troy, for appellant.
Charles A. Graddick, Atty. Gen., and James Rebarchak, Asst. Atty. Gen., for appellees State of Alabama, Ealon Lambert, Jack Lufkin, and John Porter.
Bobby N. Bright, Chief Counsel, and Harry A. Lyles, Asst. Attys. Gen., Ala. Dept. of Corrections, for appellees Britton, Cooper and Hopper.
J. Fairley McDonald III of Jones, Murray, Stewart & Yarbrough, Montgomery, for appellee Fob James.
TORBERT, Chief Justice.
Julia Cook Donahoo, as executrix of the estate of her husband, Thurman Macon Donahoo, Sr., filed a complaint for the wrongful death of her husband, who was murdered by two former state prisoners, Billy *1189 Wayne Waldrop and Henry Mays, who were alleged to have been released from prison before they were legally eligible for parole. The named defendants were the State of Alabama; Governor Fob James; Robert G. Britton, as Commissioner or Administrator of the Department of Corrections; Andrew Cooper, as Deputy Commissioner or Deputy Administrator of the Department of Corrections; Joe S. Hopper, as Commissioner or Administrator of the Department of Corrections; Ealon M. Lambert, as Chairman of the Pardons and Paroles Board; Jack C. Lufkin and John T. Porter, as members of the Pardons and Paroles Board. Mrs. Donahoo also named various fictitious parties as defendants.
The complaint alleged that the defendants, in their official capacities, acted negligently or wantonly; in bad faith, beyond or in excess of their authority; or under a mistaken impression of the "good time" law so as to prematurely and illegally release the two prisoners before they had served their lawful term. The complaint further alleged that in so acting, they were acting under color of state law and violated her husband's civil rights. She also sued under 42 U.S.C. § 1983.
Defendants State of Alabama, Lambert, Lufkin, and Porter filed a motion for summary judgment. Defendants James, Britton, Cooper, and Hopper filed motions to dismiss. Pursuant to Alabama Rules of Civil Procedure, Rule 12(b), we will consider these motions to dismiss as motions for summary judgment. The trial judge granted summary judgment in favor of all defendants on the grounds that there was no genuine issue of material fact. Mrs. Donahoo appeals.
The parties set forth numerous issues for our consideration; however, only three issues are pertinent to our disposition of this case:[1]
1. Whether the defense of sovereign immunity is unavailable to the defendants if they are found to have acted in bad faith, beyond their authority, or under a mistaken interpretation of the law; i.e., in the context of this summary judgment, whether the defense of sovereign immunity requires a judgment in favor of these defendants regardless of these claims or the facts supporting them;
2. Whether the defendants owed a legal duty to the decedent to protect him from the paroled prisoners, and
3. Whether the plaintiff stated a claim under 42 U.S.C. § 1983.

I. DEFENSE OF SOVEREIGN IMMUNITY
We have previously been confronted with questions regarding the liability of state officials arising from injuries caused by prisoners in two cases; however, in those cases, the allegations were different from those presented here. In Gill v. Sewell, 356 So.2d 1196 (Ala.1978), a police officer was injured by a work release inmate; the officer sued the work release center, the center director, the Board of Corrections, the Board's commissioner, and the State of Alabama, alleging that the defendants were negligent in allowing a convicted felon with a long history of violent crimes to be released to a minimum security institution. We held that the suit was barred by Ala.Const., art. I, § 14. In Sellers v. Thompson, 452 So.2d 460 (Ala.1984), the plaintiff alleged that the members of the Board of Pardons and Paroles, while acting within the scope of their authority, negligently and wantonly paroled a prisoner who subsequently murdered the plaintiff's husband. She further alleged that the Board members exceeded their statutory authority in paroling the prisoner because they failed to obtain and review a psychiatric report on the prisoner. We refused to read Code 1975, § 15-22-25, to require a psychiatric report on all inmates who could be considered for parole. We held that *1190 "under our holding in Gill ... the Board members' ultimate decision to grant or deny parole constitutes the exercise of a discretionary function within the ambit of the immunity shield of Ala.Const., art. I, § 14." 452 So.2d at 461.[2] In Sellers, we pointed out in a footnote that the scope of discretionary function immunity has been expanded "to include allegations of wantonness on the part of State officials sued in their individual capacities where ... there was no evidence of bad faith on the part of the officials." 452 So.2d at 462, n. 3.[3]
In the present case, we are presented with the additional allegation of bad faith on the part of State officials. In Rigby v. Auburn University, 448 So.2d 345 (Ala.1984), and Unzicker v. State, 346 So.2d 931 (Ala.1977), we held that allegations that State officials acted fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law are sufficient to remove the case from the protection of Ala.Const., art. I, § 14. Since the present plaintiff alleged that the defendants acted in bad faith, beyond their authority, or under a mistaken interpretation of the law, we must hold that the defendants were not protected by the terms of Section 14. In other words, those responsible for the release and supervision of prisoners are not entitled to absolute immunity.[4]

II. DUTY
Notwithstanding the fact that the defendants were not entitled to summary judgment based on their defense of sovereign immunity, their summary judgment was nevertheless proper because they did not owe any legal duty to the decedent. The plaintiff would have us adopt the position assumed by the Arizona Supreme Court in Grimm v. Arizona Bd. of Pardons & Paroles, 115 Ariz. 260, 564 P.2d 1227 (1977). In Grimm, the court adopted Restatement (Second) of Torts, § 319 (1966), and held that the Board narrowed its duty from one owed to the general public to one owed to individuals by assuming parole supervision over a person having dangerous tendencies. See also, Ryan v. State, 134 Ariz. 308, 656 P.2d 597 (1982) (holding that the duty owed by the State was not different from that owed by private litigants).
We disagree with the views expressed in Grimm and its progeny, and we take this opportunity to declare that we will follow the line of cases holding that in order to establish liability on the part of state officials, the plaintiff must plead and prove that the officials knew or should have known that an aggressor might be a danger to a specific individual. "The identification of a specific individual as a potential victim would give rise to a special duty on the part of the officials to take reasonable steps to prevent an attack. In the absence of such a special duty, there could *1191 be no basis for state liability." Orzechowski v. State, 485 A.2d 545, 548 (R.I.1984); Thompson v. County of Alameda, 27 Cal.3d 741, 167 Cal.Rptr. 70, 80, 614 P.2d 728, 738 (1980).
The courts in Orzechowski and Thompson expressed their rationales for holding that the duty owed by the parole board was a general duty only and would not result in liability on the part of the parole board. The court in Orzechowski emphasized that a contrary holding would undermine the parole board's ability to function properly:
"If the parole board's duty were to be classified as a special duty running to each and every individual member of the public, ... the potential for private lawsuits would be limitless as any injury caused by a parolee would be actionable. This would severely undermine the ability of the parole board to perform its functions properly. Such an extension of liability would be likely to present a disincentive to serve on the parole board and might very well exert an influence, however great or small, on the decisionmaking process itself....
"... [A]s sovereign, the State of Rhode Island undertakes a wide variety of activities which an individual either would not or could not undertake. The paroling of convicted felons is just one such action. The state acts in this area not out of mere volition or desire, but out of an obligation owed to its citizens. The state cannot be analogized to one who volunteers and then may be held liable to all persons proximately affected by those actions. The state, as sovereign, is under a continuing duty to perform certain functions, and we decline to hold them liable for the consequences of performance of those functions in the absence of a duty to a specific person or class of persons. A contrary decision would subject the state to potential liability for each and every action it undertook. Even minimal insight reveals that this would lead to hesitation on the part of the state to undertake and perform duties necessary to the functioning of a free society." 485 A.2d at 549-50.
The Thompson court summarized its holding thusly:
"In summary, whenever a potentially dangerous offender is released and thereafter commits a crime, the possibility of the commission of that crime is statistically foreseeable. Yet the Legislature has concluded that the benefits to society from rehabilitative release programs mandate their continuance. Within this context and for policy reasons the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim.... In those instances in which the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger, a releasing agent may well be liable for failure to warn such persons. Despite the tragic events underlying the present complaint, plaintiff's decedent was not a known, identifiable victim, but rather a member of a large amorphous public group of potential targets." 167 Cal.Rptr. at 80, 614 P.2d at 738.
See also, Saunders v. State, 446 A.2d 748 (R.I.1982); County of Santa Barbara v. Superior Court, 15 Cal.App.3d 751, 93 Cal. Rptr. 406 (1971); Evett v. City of Inverness, 224 So.2d 365 (Fla.Dist.Ct.App.1969) (police officer owed no duty to plaintiff's decedent who was killed by an intoxicated driver after the officer allowed him to continue driving on the public highways).
Since there is no allegation that the defendants had reason to know that Waldrop and Mays posed a threat to Mr. Donahoo in particular, we are compelled to hold that the defendants did not breach a specific duty; and, therefore, no liability can ensue.

III. SECTION 1983 CLAIM
As for plaintiff's 42 U.S.C. § 1983 claim that the defendants, by their actions in releasing Waldrop and Mays, deprived the plaintiff's decedent of his life without due process of law, in violation of the U.S. *1192 Const., Fourteenth Amendment, we find Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), to be dispositive of this issue. In Martinez, a factually similar case, the United States Supreme Court stated:
"[A]s we recently held in Baker v. McCollan, 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433], `the first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right "secured by the Constitution and laws"' of the United States....
"Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the `State ... of life ... without due process of law.' Although the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action.... [W]e hold that ... appellees did not `deprive' appellant's decedent of life within the meaning of the Fourteenth Amendment.
"Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board.... Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to `deprive' someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." 444 U.S. at 284-285, 100 S.Ct. at 558-559.[5] See also, Sellers v. Thompson, 452 So.2d 460 (Ala.1984), and Pate v. Alabama Board of Pardons and Paroles, 409 F.Supp. 478 (M.D.Ala.1976), aff'd, 548 F.2d 354 (5th Cir.1977).
Since there was no genuine issue as to any material fact and defendants were entitled to judgment as a matter of law, the trial judge properly granted summary judgment in their favor.
AFFIRMED.
ALMON, BEATTY and HOUSTON, JJ., concur.
MADDOX, JONES and SHORES, JJ., concur specially.
FAULKNER and ADAMS, JJ., dissent.
MADDOX, Justice (Concurring specially).
I am of the opinion that mere allegations of bad faith should not strip parole officials of their immunity for acts committed in the course of their duties. In fact, parole officials should be protected by the same absolute immunity afforded judges, because the function of the parole board is more akin to that of a judge than to that of an administrative officer. Pate v. Alabama Board of Pardons & Paroles, 409 F.Supp. 478 (M.D. Ala.1976).
In Pate, plaintiff, whose minor daughter was allegedly raped and killed by an Alabama parolee, brought a civil rights action against the Alabama Board of Pardons and Paroles and three members thereof, who were charged with misfeasance, nonfeasance, and malfeasance in the performance of their official duties. United States District Judge Varner held that the Board of Pardons and Paroles was immune from suit by virtue of the Eleventh Amendment and the doctrine of official immunity, and that members of the Board were absolutely immune from liability under the Civil Rights Act; therefore, he granted the defendants' *1193 motion to dismiss. Judge Varner wrote, as follows:
"As to Defendant, Alabama Board of Pardons and Paroles, it is the opinion of this Court that the said Board is immune from suit by virtue of the Eleventh Amendment to the Constitution of the United States and the doctrine of official immunity.
"Defendants Lambert, Robinson and Ussery are charged with misfeasance, nonfeasance and malfeasance in the performance of their official duties. There has been a strong tendency in the courts to grant to parole and probation officials an immunity from suit under 42 U.S.C. § 1983 similar to that granted to judges on the ground that such officials, when performing their official duties, are engaged in `quasi-judicial' activities. Burkes v. Callion, 433 F.2d 318 (9th Cir.1970), cert. den. 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); Silver v. Dickson, 403 F.2d 642 (9th Cir.1968), cert. den. 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969).
"The complaint herein alleges, not only negligence but also, reckless willfulness and wantonness. There is dictum in some lower court cases that an allegation of bad faith, coupled with a substantial showing thereof, might strip parole officials of their immunity for acts committed in the course of their duties. Joyce v. Gilligan, 383 F.Supp. 1028 (ND Ohio, 1974), affm'd. without opinion 510 F.2d 973 (6th Cir.1975). Upon consideration of the reasons supporting immunity, however, this Court concludes that parole officials should be protected by the same absolute immunity afforded judges for acts resulting from the performance of their official duties.
"Parole officials bear a more than ordinary responsibility because of the dangerous traits already demonstrated by those with whom they must deal. This responsibility imposes far greater moral burdens and requires far more difficult legal choices than those met by the average administrative officer. The function of the Parole Board is more nearly akin to that of a judge in imposing sentence and granting or denying probation than it is to that of an executive administrator. It is essential to the proper administration of criminal justice that those who determine whether an individual shall remain incarcerated or be set free should do so without concern over possible personal liability at law for such criminal acts as some parolee will inevitably commit; in other words, that such officials should be able to exercise independent judgment without pressure of personal liability for acts of the subject of their deliberations."
As a footnote to this last quoted paragraph, Judge Varner added:
"The system of rehabilitation practiced in this country, involving probation, parole, and pardon, could not be effective if those burdened with the decisions incident thereto were subjected to personal liability for mistakes, the occurrence of which is inherent to the system."
409 F.Supp. at 479.
I am of the opinion that parole officials should be protected by the same absolute immunity afforded judges for acts resulting from the performance of their official duties; therefore, I believe that Pate sets out the correct principle of law which this Court should follow in determining whether plaintiff has stated a cause of action under state or federal law. Why do I believe that parole officials are protected by absolute immunity? How broad is that immunity? In my opinion, immunity is necessary, because of the reasons set out in Pate, and it is as broad as that immunity set out in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In Stump, an Indiana circuit judge approved a petition filed by the mother of her 15-year-old daughter to have her daughter sterilized. The daughter later filed suit against the judge. He claimed judicial immunity. The Supreme Court of the United States held:
"The governing principle of law is well established and is not questioned by the *1194 parties. As early as 1872, the Court recognized that it was `a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.' Bradley v. Fisher, [80 U.S. (13 Wall.) 335], at 347 [20 L.Ed. 646]. For that reason the Court held that `judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' 13 Wall., at 341. Later we held that this doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle. Pierson v. Ray, 386 U.S. 547 [87 S.Ct. 1213, 18 L.Ed.2d 288] (1967).
"The Court of Appeals correctly recognized that the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. Because `some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction ...,' Bradley, supra, [80 U.S.] at 352, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the `clear absence of all jurisdiction.' 13 Wall., at 351."
I am of the opinion that Donahoo's complaint, on its face, shows that she is not claiming that the parole officials acted in the "clear absence of jurisdiction." Consequently, I would dismiss her complaint on this ground.
Needless to say, Alabama law is not settled on when and under what circumstances a public official can be sued when an injury results as a consequence of his act, while he is acting in his capacity as a public official. In Unzicker v. State, 346 So.2d 931 (Ala.1977), this Court permitted a declaratory judgment action to be filed against state officials to have the rights under a deed declared, and to have a mineral lease from the state declared void. The action was grounded on allegations that the officials had acted fraudulently and beyond their authority. Similarly, I authored an opinion in Rigby v. Auburn University, 448 So.2d 345 (Ala.1984), in which a police officer sought an injunction to compel the University to pay him a salary that conformed with the University compensation for his job classification. This Court held that the agents of the University were not protected by sovereign immunity where the officer alleged that the agents were guilty of fraud and bad faith and had acted beyond their authority. In Sellers v. Thompson, 452 So.2d 460 (Ala.1984), the widow of a victim of a murder committed by a paroled prisoner filed suit against individual members of the Board of Pardons and Paroles. On appeal, this Court held that: (1) the members could invoke the discretionary function immunity to preclude personal liability for their allegedly negligent or wanton parole of the prisoner; (2) the Board members did not exceed their statutory authority in paroling the prisoner without first obtaining and reviewing a psychiatric report on him and, therefore, they could claim the discretionary function immunity; and (3) the members who voted to parole the prisoner were immune from personal liability under the federal Civil Rights Act of 1871.
Even though the 38-page complaint in this case alleges that the parole officers "acted either in bad faith, beyond and in excess of their authority or under a mistaken impression of the law when they prematurely and illegally released [the two inmates]," the factual allegations in the complaint, construing them most favorably in favor of the plaintiff, claim only that the *1195 parole officials, based on the inmates' records, should not have released them. I do not believe the facts alleged in this complaint are materially different from those alleged in Sellers v. Thompson, supra. In Sellers, after examining the allegations made to support plaintiff's claim, this Court held that no claim was stated. Although Pate, supra, was not cited as authority in support of the denial of plaintiff's state claim, Pate was favorably cited as authority for denial of plaintiff's federal claim. I am of the opinion that this Court should adopt the principle of law in Pate that parole officers have absolute immunity, and this rule should be adopted as a rule to apply to suits against parole officers under Alabama law.
Construing the allegations of the complaint most strongly in favor of the pleader to determine whether the plaintiff could prove any set of facts in support of her claim which would entitle her to relief, I think that the trial court did not err in granting the defendants' motion to dismiss.
JONES and SHORES, JJ., concur.
ADAMS, Justice (dissenting).
I respectfully dissent. Although I agree with the majority that plaintiff has stated a cause of action consistent with the decisions this Court has made in this field of the law, I would not reach the question of duty at this stage in the litigation. Sellers v. Thompson, 452 So.2d 460 (Ala.1984); Rigby v. Auburn University, 448 So.2d 345 (Ala.1984); Gill v. Sewell, 356 So.2d 1196 (Ala.1978); Unzicker v. State, 346 So.2d 931 (Ala.1977). As strange as it may seem, both parties agreed at oral argument that they had not engaged in discovery before the circuit court granted summary judgment for all defendants. Because of the far-reaching ramifications of this decision, I would remand this case to allow both sides to engage in extensive discovery to determine if the defendants acted in bad faith, beyond or in excess of their authority, negligently or wantonly, or under a mistaken impression of the good-time law when they released the two prisoners involved here before they served their lawful terms. A flushing out of the facts may reveal that the allegations of the complaint do not comport with the facts. Then, and only then, would we reach the issue of duty dealt with in the majority holding.
FAULKNER, J., concurs.
NOTES
[1] We find it unnecessary to discuss the issue of whether the plaintiff is barred from suing the State by virtue of U.S. Const., amend. 11, since plaintiff's counsel conceded that summary judgment was properly granted in favor of the State. See also, Ala. Const., art. I, § 14. Hereafter, when we refer to "defendants," we are not including the State.
[2] See also Payton v. United States, 679 F.2d 475 (5th Cir.1982). Some states do not distinguish between ministerial and discretionary functions, instead granting such state officials with immunity for all acts connected with the parole of prisoners. E.g., Burg v. State, 147 N.J.Super. 316, 371 A.2d 308 (1977) (plaintiff charged defendants with permitting a prisoner to be at liberty without supervision and in violation of applicable rules and standards of penology); State v. Superior Court, 37 Cal.App.3d 1023, 112 Cal.Rptr. 706 (1974) (plaintiff alleged that guards permitted inmates to be released despite the fact that these inmates were not eligible for release). In yet another state, the court decides the extent of immunity afforded public officials on a case-by-case method. See Estate of Armstrong v. Pennsylvania, Bd. of Probation, 46 Pa. Cmwlth. 33, 405 A.2d 1099 (1979).
[3] Several categories of cases, however, do not fall within the prohibition of Ala.Const., art. I, § 14. See, Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), and Unzicker v. State, 346 So.2d 931 (Ala.1977).
[4] Today's holding is contrary to that of the court in Pate v. Alabama Bd. of Pardons & Paroles, 409 F.Supp. 478 (M.D.Ala.1976). The Pate court said that the allegation of bad faith should not strip parole officials of their immunity for acts committed in the course of their duties. Rather, the court held that such officials should be protected by the same absolute immunity afforded judges, because the function of the parole board is more akin to that of a judge than to that of an administrative officer.
[5] We note, for the sake of parallel, that, in the case at bar, Waldrop was released January 3, 1981, and Mays was released March 15, 1982. Mr. Donahoo was not murdered until June 2, 1982two and one-half months after the release of Mays. The mere fact that the time between the release and the murder was only half as long as the time in Martinez cannot convert the actions of the prisoners into state action.