Julia Cook Donahoo, as executrix of the estate of her husband, Thurman Macon Donahoo, Sr., filed a complaint for the wrongful death of her husband, who was murdered by two former state prisoners, Billy *Page 1189 
Wayne Waldrop and Henry Mays, who were alleged to have been released from prison before they were legally eligible for parole. The named defendants were the State of Alabama; Governor Fob James; Robert G. Britton, as Commissioner or Administrator of the Department of Corrections; Andrew Cooper, as Deputy Commissioner or Deputy Administrator of the Department of Corrections; Joe S. Hopper, as Commissioner or Administrator of the Department of Corrections; Ealon M. Lambert, as Chairman of the Pardons and Paroles Board; Jack C. Lufkin and John T. Porter, as members of the Pardons and Paroles Board. Mrs. Donahoo also named various fictitious parties as defendants.
The complaint alleged that the defendants, in their official capacities, acted negligently or wantonly; in bad faith, beyond or in excess of their authority; or under a mistaken impression of the "good time" law so as to prematurely and illegally release the two prisoners before they had served their lawful term. The complaint further alleged that in so acting, they were acting under color of state law and violated her husband's civil rights. She also sued under 42 U.S.C. § 1983.
Defendants State of Alabama, Lambert, Lufkin, and Porter filed a motion for summary judgment. Defendants James, Britton, Cooper, and Hopper filed motions to dismiss. Pursuant to Alabama Rules of Civil Procedure, Rule 12 (b), we will consider these motions to dismiss as motions for summary judgment. The trial judge granted summary judgment in favor of all defendants on the grounds that there was no genuine issue of material fact. Mrs. Donahoo appeals.
The parties set forth numerous issues for our consideration; however, only three issues are pertinent to our disposition of this case:[1]
1. Whether the defense of sovereign immunity is unavailable to the defendants if they are found to have acted in bad faith, beyond their authority, or under a mistaken interpretation of the law; i.e., in the context of this summary judgment, whether the defense of sovereign immunity requires a judgment in favor of these defendants regardless of these claims or the facts supporting them;
2. Whether the defendants owed a legal duty to the decedent to protect him from the paroled prisoners, and
3. Whether the plaintiff stated a claim under 42 U.S.C. § 1983.
 I. DEFENSE OF SOVEREIGN IMMUNITY
We have previously been confronted with questions regarding the liability of state officials arising from injuries caused by prisoners in two cases; however, in those cases, the allegations were different from those presented here. In Gillv. Sewell, 356 So.2d 1196 (Ala. 1978), a police officer was injured by a work release inmate; the officer sued the work release center, the center director, the Board of Corrections, the Board's commissioner, and the State of Alabama, alleging that the defendants were negligent in allowing a convicted felon with a long history of violent crimes to be released to a minimum security institution. We held that the suit was barred by Ala. Const., art. I, § 14. In Sellers v. Thompson,452 So.2d 460 (Ala. 1984), the plaintiff alleged that the members of the Board of Pardons and Paroles, while acting within the scope of their authority, negligently and wantonly paroled a prisoner who subsequently murdered the plaintiff's husband. She further alleged that the Board members exceeded their statutory authority in paroling the prisoner because they failed to obtain and review a psychiatric report on the prisoner. We refused to read Code 1975, § 15-22-25, to require a psychiatric report on all inmates who could be considered for parole. We held that *Page 1190 
"under our holding in Gill . . . the Board members' ultimate decision to grant or deny parole constitutes the exercise of a discretionary function within the ambit of the immunity shield of Ala. Const., art. I, § 14." 452 So.2d at 461.[2] In Sellers, we pointed out in a footnote that the scope of discretionary function immunity has been expanded "to include allegations of wantonness on the part of State officials sued in their individual capacities where . . . there was no evidence of bad faith on the part of the officials." 452 So.2d at 462, n. 3.[3]
In the present case, we are presented with the additional allegation of bad faith on the part of State officials. InRigby v. Auburn University, 448 So.2d 345 (Ala. 1984), andUnzicker v. State, 346 So.2d 931 (Ala. 1977), we held that allegations that State officials acted fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law are sufficient to remove the case from the protection of Ala. Const., art. I, § 14. Since the present plaintiff alleged that the defendants acted in bad faith, beyond their authority, or under a mistaken interpretation of the law, we must hold that the defendants were not protected by the terms of Section 14. In other words, those responsible for the release and supervision of prisoners are not entitled to absolute immunity.[4]
 II. DUTY
Notwithstanding the fact that the defendants were not entitled to summary judgment based on their defense of sovereign immunity, their summary judgment was nevertheless proper because they did not owe any legal duty to the decedent. The plaintiff would have us adopt the position assumed by the Arizona Supreme Court in Grimm v. Arizona Bd. of Pardons Paroles, 115 Ariz. 260, 564 P.2d 1227 (1977). In Grimm, the court adopted Restatement (Second) of Torts, § 319 (1966), and held that the Board narrowed its duty from one owed to the general public to one owed to individuals by assuming parole supervision over a person having dangerous tendencies. See also, Ryan v. State, 134 Ariz. 308, 656 P.2d 597 (1982) (holding that the duty owed by the State was not different from that owed by private litigants).
We disagree with the views expressed in Grimm and its progeny, and we take this opportunity to declare that we will follow the line of cases holding that in order to establish liability on the part of state officials, the plaintiff must plead and prove that the officials knew or should have known that an aggressor might be a danger to a specific individual. "The identification of a specific individual as a potential victim would give rise to a special duty on the part of the officials to take reasonable steps to prevent an attack. In the absence of such a special duty, there could *Page 1191 
be no basis for state liability." Orzechowski v. State,485 A.2d 545, 548 (R.I. 1984); Thompson v. County of Alameda,27 Cal.3d 741, 167 Cal.Rptr. 70, 80, 614 P.2d 728, 738 (1980).
The courts in Orzechowski and Thompson expressed their rationales for holding that the duty owed by the parole board was a general duty only and would not result in liability on the part of the parole board. The court in Orzechowski
emphasized that a contrary holding would undermine the parole board's ability to function properly:
 "If the parole board's duty were to be classified as a special duty running to each and every individual member of the public, . . . the potential for private lawsuits would be limitless as any injury caused by a parolee would be actionable. This would severely undermine the ability of the parole board to perform its functions properly. Such an extension of liability would be likely to present a disincentive to serve on the parole board and might very well exert an influence, however great or small, on the decisionmaking process itself. . . .
 ". . . [A]s sovereign, the State of Rhode Island undertakes a wide variety of activities which an individual either would not or could not undertake. The paroling of convicted felons is just one such action. The state acts in this area not out of mere volition or desire, but out of an obligation owed to its citizens. The state cannot be analogized to one who volunteers and then may be held liable to all persons proximately affected by those actions. The state, as sovereign, is under a continuing duty to perform certain functions, and we decline to hold them liable for the consequences of performance of those functions in the absence of a duty to a specific person or class of persons. A contrary decision would subject the state to potential liability for each and every action it undertook. Even minimal insight reveals that this would lead to hesitation on the part of the state to undertake and perform duties necessary to the functioning of a free society." 485 A.2d at 549-50.
The Thompson court summarized its holding thusly:
 "In summary, whenever a potentially dangerous offender is released and thereafter commits a crime, the possibility of the commission of that crime is statistically foreseeable. Yet the Legislature has concluded that the benefits to society from rehabilitative release programs mandate their continuance. Within this context and for policy reasons the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim. . . . In those instances in which the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger, a releasing agent may well be liable for failure to warn such persons. Despite the tragic events underlying the present complaint, plaintiff's decedent was not a known, identifiable victim, but rather a member of a large amorphous public group of potential targets." 167 Cal.Rptr. at 80, 614 P.2d at 738.
See also, Saunders v. State, 446 A.2d 748 (R.I. 1982); Countyof Santa Barbara v. Superior Court, 15 Cal.App.3d 751,93 Cal.Rptr. 406 (1971); Evett v. City of Inverness, 224 So.2d 365
(Fla.Dist.Ct.App. 1969) (police officer owed no duty to plaintiff's decedent who was killed by an intoxicated driver after the officer allowed him to continue driving on the public highways).
Since there is no allegation that the defendants had reason to know that Waldrop and Mays posed a threat to Mr. Donahoo in particular, we are compelled to hold that the defendants did not breach a specific duty; and, therefore, no liability can ensue.
 III. SECTION 1983 CLAIM
As for plaintiff's 42 U.S.C. § 1983 claim that the defendants, by their actions in releasing Waldrop and Mays, deprived the plaintiff's decedent of his life without due process of law, in violation of the U.S. *Page 1192 
Const., Fourteenth Amendment, we find Martinez v. California,444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), to be dispositive of this issue. In Martinez, a factually similar case, the United States Supreme Court stated:
 "[A]s we recently held in Baker v. McCollan, 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433], `the first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right "secured by the Constitution and laws"' of the United States. . . .
 "Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the `State . . . of life . . . without due process of law.' Although the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. . . . [W]e hold that . . . appellees did not `deprive' appellant's decedent of life within the meaning of the Fourteenth Amendment.
 "Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. . . . Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to `deprive' someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." 444 U.S. at 284-285, 100 S.Ct. at 558-559.[5] See also, Sellers v. Thompson, 452 So.2d 460 (Ala. 1984), and Pate v. Alabama Board of Pardons and Paroles, 409 F. Supp. 478 (M.D.Ala. 1976), aff'd, 548 F.2d 354 (5th Cir. 1977).
Since there was no genuine issue as to any material fact and defendants were entitled to judgment as a matter of law, the trial judge properly granted summary judgment in their favor.
AFFIRMED.
ALMON, BEATTY and HOUSTON, JJ., concur.
MADDOX, JONES and SHORES, JJ., concur specially.
FAULKNER and ADAMS, JJ., dissent.
[1] We find it unnecessary to discuss the issue of whether the plaintiff is barred from suing the State by virtue of U.S.Const., amend. 11, since plaintiff's counsel conceded that summary judgment was properly granted in favor of the State. See also, Ala. Const., art. I, § 14. Hereafter, when we refer to "defendants," we are not including the State.
[2] See also Payton v. United States, 679 F.2d 475 (5th Cir. 1982). Some states do not distinguish between ministerial and discretionary functions, instead granting such state officials with immunity for all acts connected with the parole of prisoners. E.g., Burg v. State, 147 N.J. Super. 316,371 A.2d 308 (1977) (plaintiff charged defendants with permitting a prisoner to be at liberty without supervision and in violation of applicable rules and standards of penology); State v.Superior Court, 37 Cal.App.3d 1023, 112 Cal.Rptr. 706 (1974) (plaintiff alleged that guards permitted inmates to be released despite the fact that these inmates were not eligible for release). In yet another state, the court decides the extent of immunity afforded public officials on a case-by-case method. See Estate of Armstrong v. Pennsylvania, Bd. of Probation,46 Pa. Cmwlth. 33, 405 A.2d 1099 (1979).
[3] Several categories of cases, however, do not fall within the prohibition of Ala. Const., art. I, § 14. See, Aland v. Graham,287 Ala. 226, 250 So.2d 677 (1971), and Unzicker v. State,346 So.2d 931 (Ala. 1977).
[4] Today's holding is contrary to that of the court in Pate v.Alabama Bd. of Pardons Paroles, 409 F. Supp. 478 (M.D.Ala. 1976). The Pate court said that the allegation of bad faith should not strip parole officials of their immunity for acts committed in the course of their duties. Rather, the court held that such officials should be protected by the same absolute immunity afforded judges, because the function of the parole board is more akin to that of a judge than to that of an administrative officer.
[5] We note, for the sake of parallel, that, in the case at bar, Waldrop was released January 3, 1981, and Mays was released March 15, 1982. Mr. Donahoo was not murdered until June 2, 1982 — two and one-half months after the release of Mays. The mere fact that the time between the release and the murder was only half as long as the time in Martinez cannot convert the actions of the prisoners into state action.