DECISION
The Rhode Island Department of Corrections ("Defendant" or the "Department of Corrections") moves for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure in the negligence action brought by Thomas Adams ("Plaintiff" or "Adams"). Plaintiff has alleged that Defendant was negligent in connection with the distribution of food through a local church. Defendant has filed the within motion for summary judgment, arguing that it is protected by the Public Duty Doctrine and that Plaintiff has failed to prove Defendant's negligence. For the reasons herein, Defendant's motion is granted.
 Facts and Travel
On October 16, 2004, Plaintiff and his girlfriend attended an advertised food giveaway for needy and low-income recipients at St. Raymond's Church, located in Providence, Rhode Island. Defendant delivered raisins to the Rhode Island Community Food Bank, which in turn distributed them to St. Raymond's Church. Shortly after returning to his home, Plaintiff ate a box of raisins he had received at the church. *Page 2 
After consuming the last raisin, he noticed insect larva and insect larva dung in the bottom of the package. Plaintiff claims he suffered nausea, vomiting, diarrhea, sleep loss and mental anguish for several days after consuming the box of raisins.
On April 19, 2006, Plaintiff filed the within negligence action against the Department of Corrections. Plaintiff alleges that Defendant negligently inspected, supplied, distributed and failed to protect the product given to Plaintiff and that this negligence was the proximate cause of Plaintiff's injuries. Plaintiff also contends that Defendant knew or should have known that the box of raisins was defective and unsafe for human consumption. Finally, Plaintiff claims that Defendant impliedly warranted the fitness and merchantability of the raisins, and that Plaintiff relied on this warranty in acquiring and consuming the raisins.
Defendant moves for Summary Judgment, arguing that the Public Duty Doctrine protects the Department of Corrections from any liability for any tortious conduct. In the alternative, Defendant argues that Plaintiff has failed to establish the required elements of negligence, namely that the Defendant knew or should have known about the defect.
Plaintiff has objected on the grounds that the distribution of food is a proprietary action and one normally performed by private individuals, and thus is not protected by the Public Duty Doctrine. Plaintiff also argues that Defendant has failed to establish an absence of material issue of fact as required for summary judgment. In further support of its motion for Summary Judgment, Defendant filed a Reply Memorandum shortly before, and Supplemental Affidavits soon after, argument was heard on the matter.
 Standard of Review
"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, no material questions of fact exist and the moving party is entitled to *Page 3 
judgment as a matter of law." Konar v. PFL Life Ins. Co., 840 A.2d 1115,1117 (R.I. 2004). The affidavit of the moving party must establish the absence of a material factual issue, or the court will deny the motion for summary judgment. Capital Properties, Inc. v. State, 749 A.2d 1069,1080 (R.I. 1999). A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial and "cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers of Cranston, Inc. v. Gelfuso Lachut,Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc.v. Souza, 591 A.2d 34, 35 (R.I. 1991)); Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almacs, Inc.623 A.2d 971, 972 (R.I. 1993).
 Timeliness of Defendant's Submissions
As noted above, Defendant filed supplemental materials in connection with the motion for summary judgment. Plaintiff contends that the Court should not consider the Defendant's Supplemental Affidavit of August 9, 2007 and Reply Memorandum and additional Supplemental Affidavit of August 20, 2007 because, under Plaintiff's interpretation of the Superior Court Rules of Civil Procedure, they were not timely filed ten days prior to the August 14, 2007 hearing as required by Rule 56(c). Rule 56(c) states, in pertinent part: "[t]he motion shall be served at least 10 days before the time fixed for the hearing." Plaintiff argues that such timing issues were addressed in Nichola v. John Hancock Mut.Life Ins. Co., 471 A.2d 945 (R.I. 1984), where the Court held that the trial court is given "discretion where cause is shown to enlarge the time for doing `any act required or allowed to be done at or within a specified time * * * [ ]" when (1) a party requests enlargement prior to expiration of the period originally prescribed or as *Page 4 
extended by prior order, (2) upon motion after expiration of the specified period where failure to act was due to excusable neglect, and (3) if the parties stipulate in order to permit the act to be done.Nichola 471 A.2d at 947 (quoting Beaufort Concrete Co. v. AtlanticStates Construction Co., 352 F.2d 460, 462 (5th Cir. 1965)). Plaintiff argues that Defendant has not satisfied any of the reasons why time is allowably extended, and so the supplemental material cannot be considered.
Plaintiff's reliance on Nichola is misplaced. In Nichola, the Supreme Court of Rhode Island reviewed the trial judge's refusal to consider a plaintiff's opposing memorandum and accompanying affidavit submitted on the day of a hearing. Nichola, 471 A.2d at 946. The Court reasoned that the plaintiffs, the non-moving party, had ample opportunity to submit items to oppose the summary judgment motion when the plaintiffs had four continuances granted to them — giving them four and one-half months to reply — but failed to do so until the day of the hearing. Id. at 947. The Nichola Court held that it was within the judge's discretion to refuse to consider the affidavit and memorandum. Id.
This Court notes that Rule 56(c) refers only to motions, not affidavits. Defendant properly filed the motion for summary judgment in June, almost two months before the hearing date. Rule 56(a) permits a party to move with or without supporting affidavits for a summary judgment. "Reading these two sections together [(a) and (c)], the time requirement for the filing of motions cannot relate to the filing of affidavits since motions may be filed with or without supporting affidavits." McGee v. Stone, 522 A.2d 211, 214 (R.I. 1987). Therefore, there is no requirement in Rule 56 that calls for supporting affidavits to be filed ten days before the hearing date, and the Plaintiff's interpretation of the rule and court's holding is unpersuasive.
Further, Nichola is distinguishable from the case at bar becauseNichola concerns the *Page 5 
non-moving party's failure to file an opposing memorandum to the motion or affidavits before the actual day of the trial. As a party opposing a motion for summary judgment, the plaintiff in Nichola had the affirmative duty to prove by competent evidence "the existence of a disputed issue of material fact" and could not "rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v. The Town Council of East Greenwich, et al.,880 A.2d 784, 791 (R.I. 2005) (quoting Lucier v. Impact Recreation,Ltd., 864 A.2d 635, 638 (R.I. 2005)). In Nichola, the plaintiff did not attempt to meet this affirmative burden until the day of the trial, so the court held that it was in the trial court's discretion not to consider the affidavits and memorandum. Nichola, 471 A.2d at 947.
In the case at bar, it is the timing of the moving party's filings that is at issue. The Defendant filed an affidavit five days before trial and one day before the Plaintiff filed its opposing memorandum. If Plaintiff wanted to argue the untimeliness of the affidavit, it should have done so at the hearing. The Supreme Court of Rhode Island has previously held that a defendant "`waived any objection [it] may have had to being unfairly surprised by [plaintiff's] affidavit and to its argument regarding its alleged lack of notice' when it argued the merits of the motion instead of either specifically objecting to the untimely filed affidavit or moving for a continuance, pursuant to Rule 56(f) of the Superior Court Rules of Civil Procedure." George v. Fadiani,772 A.2d 1065, 1068 (R.I. 2001) (quoting Sullivan v. Town of Coventry,707 A.2d 257, 259 (R.I. 1998)).
Finally, it is in the judge's discretion to admit untimely affidavits. During the hearing on August 14th, this Court granted Defendant an additional week to reply to Plaintiff's opposing memorandum of August 10th and to provide a counter affidavit. Where a court asks the parties to file a memorandum, and an affidavit is filed in response to that request, the Supreme Court of *Page 6 
Rhode Island has held that the trial judge has the discretion to decide whether the affidavits have been filed in a manner and at a time that warranted the court's review. McGee, 522 at 214. Defendant's submission of another memorandum and affidavit were with the permission of this Court and within the permissible time and so shall be considered in deciding whether this case is ripe for summary judgment.
 Public Duty Doctrine
Defendant argues that the Public Duty Doctrine shields it from liability for negligence. Plaintiff objects, arguing that the doctrine does not apply because Defendant was performing a function capable of being performed by private persons. Thus, before this Court is the issue of whether a state agency charged with distributing food from the United States Department of Agriculture can be held liable for negligence, or whether the agency is protected from liability by the Public Duty Doctrine.
The liability of the state or any political subdivision is addressed in G.L. 1956 § 9-31-1, which provides:
 "The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter."
However, the Public Duty Doctrine shields the state from tort liability arising out of discretionary governmental actions that are inherently incapable of being performed by private persons. Defusco v. TodescoForte, Inc., 683 A.2d 363, 365 (R.I. 1996); Quality Court CondominiumsAssociation v. Quality Hill Development Corp., 641 A.2d 746, 750 (R.I. 1994); Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992). Discretionary government functions *Page 7 
also include those activities "not ordinarily engaged in by private individuals." Houle v. Galloway Sch. Lines, 643 A.2d 822, 825 (R.I. 1994); Polaski v. O'Reilly, 559 A.2d 646, 647 (R.I. 1989);Orzechowski v. State, 485 A.2d 545, 549 (R.I. 1984). The determination as to whether or not an activity is a government function is fact-specific, and the analysis must be functional, rather than abstract. O'Brien v. State, 555 A.2d 334, 338 (R.I. 1989). If the court determines the activity is one not ordinarily performed by a private person or corporation, the Public Duty Doctrine will protect the state actor from liability.
The Plaintiff contends that the action here is simply the distribution of food, which private parties such as supermarkets, convenience stores, and food banks do on a regular basis. However, the distribution of food that occurred in this matter is much more complex than that. The Rhode Island Department of Corrections operates the Central Distribution Center ("CDC"), which provides for centralized ordering, warehousing and distribution of finished goods, including food goods. The Department of Corrections also participates in The Emergency Food Assistance Program (TEFAP) run by the United States Department of Agriculture (USDA). The Emergency Food Assistance Program is a federal program aimed at supplementing the diets of low-income Americans by providing them with food and nutrition assistance at no cost. The USDA purchases food and ships it to state distributing agencies, which, for Rhode Island, is the Department of Corrections. Regularly, the USDA audits the Department of Corrections to ensure that the food is not mingled with other food held at the facility. The Department of Corrections is then in charge of selecting organizations throughout the state to receive these food goods to be delivered to the needy households.
The state distributing agencies receive administrative funds to compensate them for the storage and distribution of the food. The amount of food and funds that each state distributing *Page 8 
agency receives depends on the low-income and unemployed population of the state. In addition, the state distributing agency is in charge of determining the criteria for which households and individuals are eligible to receive the food, and the local organizations must use these criteria in distributing the food.
The CDC is also charged with establishing the criteria households must meet in order to be provided any of this food by the local organizations. According to the USDA Food Distribution Fact Sheet, it is in the state agency's discretion to use income standards to determine eligibility of a household, and it can adjust the income criteria to ensure assistance is provided to those households most in need. While private individuals are ordinarily able to distribute food, none is permitted to be the main receiver of food and supervisor of the overall distribution of food under TEFAP. The food here was purchased by the federal government and distributed, along with federal funds, through the Defendant to the local church where Plaintiff received it. This distribution of federal funds and food is a discretionary matter performed by a government agency. Private individuals or corporations are not permitted to perform this activity. Consequently, the Defendant's actions in this case, while on the surface are seemingly of the type that can be performed by private individuals, clearly are not such here.
Furthermore, the Public Duty Doctrine is applicable because Defendant's actions are being performed for the public good as a whole. The Rhode Island Supreme Court has explained that the Public Duty Doctrine "rests on the policy that the public treasury should not be exposed to claims involving acts done for the public good as a whole, given that `the exercise of these functions cannot reasonably be compared with functions that are or may be exercised by a private person.'" Haworth v. Lannon, 813 A.2d 62, 66 (R.I. 2003) (quotingO'Brien, 555 A.2d at 337). Through TEFAP, the USDA provides much needed food to low-income Americans. *Page 9 
Because Defendant's distribution of food and funds is an act for the public good as a whole, the Public Duty Doctrine is applicable. Therefore, the Public Duty Doctrine applies in this case, and Defendant is shielded from liability unless any recognized exception applies.
 Exceptions to the Public Duty Doctrine
Although the Public Duty Doctrine may protect a defendant from tort liability, two exceptions exist that remove that protection and cause a government or its agencies to be liable for the tortuous conduct: special duty and egregious conduct. For the special duty exception to apply, the plaintiff must have had some form of previous contact with state or municipal officials, and such officials must then "knowingly embarked on a course of conduct that endangered the plaintiff" or the plaintiff must have otherwise specifically come within the knowledge of the officials. Quality Court Condominium Association, 641 A.2d at 750
(quoting Knudsen v. Hall, 490 A.2d 976, 978 (R.I. 1985)). "To satisfy the burden of qualifying for such exception the plaintiff must demonstrate a breach of a duty owed by the state to the plaintiff in his or her individual capacity and not merely a breach of some obligation owed the general public." Haley v. Town of Lincoln, 611 A.2d 845, 849
(R.I. 1992) (citing Ryan v. State Dept. of Transportation, 420 A.2d 841,843 (R.I. 1980)).
Here, the Defendant did not owe Plaintiff any special duty. The Defendant did not give Plaintiff the raisins specifically; instead, Plaintiff was simply a member of the general public who attended a food giveaway where the raisins were handed out. The Defendant did not know Plaintiff, nor did it know he had received the raisins until the complaint was filed. Any duty the Defendant had was for the safety of the general public, not this individual Plaintiff. The Plaintiff *Page 10 
has not presented any evidence that would show any type of previous or special relationship that would amount to creating a special duty; therefore, the special duty exception does not apply.
For the egregious conduct exception to apply, the Plaintiff must show the state knows "that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation." Verity v. Danti, 585 A.2d 65 (R.I. 1991). To prove egregious conduct the following elements must be established: (1) the state, in undertaking a discretionary action or in maintaining or failing to maintain the product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril; (2) the state, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and (3) the state, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so.Haley, 611 A.2d at 849.
Defendant, in support of its argument that it had no notice of any problem with the food it distributed, submitted the supplemental affidavit of Terrence McNamara, the manager of the CDC. In the affidavit, Mr. McNamara generally avers that he did not personally notice anything visibly wrong with the raisins at issue in the instant complaint; that Griggs Browne inspected the CDC every week for insects and/or rodents and he would have been personally notified if they had discovered any infestation; that it was the procedure at the CDC for any employee discovering an infestation to alert him and he does not recall any employee ever alerting him to an infestation around the refrigerator where the raisins were kept, or of any potential meal moth infestation anywhere at the CDC; that he believes any of the local organization recipients of the raisins would contact him if the raisins were defective; that it is his belief that the CDC has never had a meal moth infestation; that no other complaints were received about the raisins; that the *Page 11 
USDA would investigate if the Department of Corrections receives a complaint about the food; and that the USDA did investigate Plaintiff's complaint and found it was an isolated incident and no further action was needed.
An affidavit's content is crucial to the determination of whether summary judgment should be granted due to lack of issue of material fact. In Sullivan v. Town of Coventry, 707 A.2d 257, 259 (R.I. 1998), the Court held that summary judgment should not have been granted because the trial court relied on an affidavit that did not address whether the defendant might have had notice by proper care and diligence and not just by complaints filed. Here, the combination of affidavits and other supporting documentation eliminate all the possible avenues the CDC had for notice of a potential meal moth infestation. Due diligence was taken by the CDC in having weekly insect and rodent inspections done of the premise. There were no complaints filed about the same shipment of raisins, and no reports were filed by employees or other local organizations about a potential infestation. Mr. McNamara also did not personally notice anything visibly wrong with the raisins.
Plaintiff contends that the affidavit of McNamara alone fails to negate the possibility that other people besides Mr. McNamara might have obtained notice of problems with insect infestation or with food at the storage facility. As noted above, a party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Plaintiff's speculative assertion that others may have had notice of a food problem fails to satisfy his burden of proof in raising any genuine issue of material fact as to notice. Consequently, there is no material issue of fact regarding notice of the defective product. *Page 12 
Because this Court finds that the Defendant had no notice of any "perilous circumstances," the Defendant's conduct was not egregious. Again, the Defendant had no knowledge that the raisins were damaged. An exterminator did weekly check-ups of the site where the raisins were stored and found no infestations. Similarly, no other complaints were filed about the raisins distributed by the Defendant. Also, Mr. McNamara recalled no reports of infestation from any employees, who are trained to go to him when they perceive a problem. Accordingly, the Plaintiff has not sufficiently made any showing that the Defendant's actions with regard to the distribution of raisins constituted egregious conduct, and therefore, the exception doesn't apply.
 Conclusion
After consideration of the parties' oral arguments and their respective memoranda, this Court grants summary judgment for the Defendant, Rhode Island Department of Corrections. In ruling for the Defendant, this Court finds that (1) the distribution of federally purchased and funded food items is the type of activity protected under the Public Duty Doctrine; and (2) neither of the exceptions to the Public Duty Doctrine is applicable here. Summary judgment is appropriate because the Plaintiff presented no genuine issue of material fact toward the establishment of either exception to the Public Duty Doctrine, and therefore, the Rhode Island Department of Corrections is exempt from liability as a matter of law. Counsel shall submit an appropriate order in accordance with the Court's decision. *Page 1